Sharon GARLAND, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 75S00–0011–CR–713.

Supreme Court of Indiana.

May 14, 2003.

Eric K. Koselke, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Martha Warren–Rosenfeld, Christopher Lafuse, Deputy Attorneys General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

Indiana Evidence Rule 404(b) is customarily used by criminal defendants to seek exclusion of evidence about their own prior bad acts. Appellant Sharon Garland presents a question of first impression: does Rule 404(b) apply to evidence about persons other than the defendant? We conclude that it does.

### Facts and Procedural History

On the evening of January 24, 1996, David Garland was shot four or five times in the head. The events leading up to his murder, however, began more than two years earlier.

In October 1994, the Knox City Court ordered Sharon and David's son Allen to go to a Recovery Center for a drug and alcohol evaluation. At the Recovery Center, Allen and his mother Sharon met a substance abuse counselor named James Lloyd.

Over the course of Allen's counseling at the Center, Sharon and Lloyd became friends. Sharon told Lloyd that she and her husband David were having marital problems. Lloyd began counseling Sharon and David, individually and as a couple. During the summer of 1995, Sharon began visiting Lloyd twice a week.

Lloyd learned during the counseling that David Garland had molested Sharon's brother, who in turn molested Allen. In the summer of 1996, Lloyd told Allen that his father needed to be killed, and declared that all child molesters should be killed. When Lloyd asked Allen if he wanted to be a part of this plan to murder David Garland, Allen told Lloyd that he did not think it was a well thought out plan.

About two months before David was killed, Sharon purchased a $50,000 life insurance policy on her husband, and she told her friend Marvin Busse that if David died she would take the money and go to Florida. The weekend before David's death, while Sharon and David were playing cards with friends, Sharon became angry with David and told him that she would hire somebody to kill him and take the insurance money and go to Florida.

On the evening of January 24, 1996, James Lloyd came to the Garlands' trailer. Sharon met with Lloyd outside, and after a few minutes, Allen joined them on the porch. Allen then saw that Lloyd had a gun. Lloyd told Allen that if he didn't "want any part of this" to stay outside.

Sharon and Lloyd then entered the trailer. Allen heard three or four shots. When Allen went inside, he saw Sharon putting on her shoes. Allen and Sharon then left the trailer and drove down the road to an intersection, where Allen was picked up by a friend. Sharon proceeded to Wal–Mart.

After witnessing the murder of her husband, Sharon shopped in Wal–Mart as if nothing happened. She bought a cappuccino, spoke to a friend, and a relative, bought two pairs of jeans (remarkably, for

her husband, whom she had just seen killed) and then returned to the family trailer where she knew David's body still remained.

The State eventually charged Sharon with murder[1] and conspiracy to commit murder[2]. On the conspiracy count, the charging information as amended alleged that Sharon aided, induced, or caused Allen Garland or James Lloyd to kill David Garland.

A jury found Sharon guilty of murder and conspiracy to commit murder. We reversed the judgment, concluding that defense counsel's failure to make the proper *Bruton* objection constituted ineffective assistance of counsel. *Garland v. State,* 719 N.E.2d 1184, 1186–87 (Ind.1999). A jury again found Sharon guilty on both counts. The trial court merged the conspiracy count into the murder and sentenced Sharon to fifty-five years executed.

## I. To Whom Does Rule 404(b) Apply?

■ Sharon asserts that the trial court erred in excluding the testimony of Stephen Joseph, whose testimony she thought would rebut the State's theories about accomplice liability and motive.

Stephen Joseph was a former counseling client of Lloyd's. Joseph says that during the period of his counseling, Lloyd offered to obtain an illegal driver's license for him in exchange for $1,200. After receiving payment, Lloyd did not produce the license. Joseph maintains that when he asked Lloyd for his money back, Lloyd threatened to "put a bullet in his head". (R. at 408, 3079.)

Sharon wanted to present evidence that Lloyd told the Garlands he could erase any record of Allen Garland's conviction in exchange for $1,200. Sharon says that when the Garlands confronted Lloyd about re-

turning the money, Lloyd accused the Garlands of trying to set him up and shot David Garland in retaliation. She thus wanted to use Joseph to rebut the State's accomplice liability theory that Sharon acted in concert with Lloyd. She says it would have shown that Lloyd acted alone and had his own motive to murder David Garland.

The State filed a motion in limine seeking to preclude evidence relating to Stephen Joseph. The trial court granted the State's motion based on Evid. R. 404(b):

> (b) **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Sharon contends that Joseph's testimony was admissible under the identity and motive exceptions of Rule 404(b).

■ *Applicability of Rule 404(b).* The traditional office of Rule 404(b) has been to protect a defendant from being convicted based on unrelated prior bad acts. The principal risks of unfair prejudice presented by uncharged misconduct evidence are that the jury will infer that the defendant is a bad person who should be punished for other, uncharged misdeeds, *Williams v. State,* 677 N.E.2d 1077, 1081 (Ind.Ct.App.

---

**1.** Ind.Code Ann. § 35–42–1–1(1) (West 1998).    **2.** Ind.Code Ann. § 35–41–2–4 (West 1998).

1997), and that the jury will draw the forbidden inference that the defendant's character is such that she has a propensity to engage in conduct of the sort charged, and that she acted in conformity with that character on the occasion at issue in the charge. *Rossetti v. Curran*, 80 F.3d 1, 6 (1st Cir.1996). Early efforts to use Rule 404(b) as a basis for excluding evidence about prior bad acts of non-defendants were rejected on grounds that protecting defendants was the rule's central purpose. *See e.g., United States v. Morano*, 697 F.2d 923, 926 (11th Cir.1983).

More recently, courts have begun to apply Rule 404(b) to evidence about the bad acts of non-parties. Under what has come to be called "reverse 404(b)", courts have held that "a defendant can introduce evidence of someone else's conduct if it tends to negate the defendant's guilt." *United States v. Wilson*, 307 F.3d 596, 601 (7th Cir.2002).

We think the cleanest way of thinking of 404(b) in this context is a little different. First, the text of Rule 404(b) is such that it governs evidence about acts by defendants, and non-defendants. Second, the rule acts as an appropriate restraint on admissibility of evidence about events or acts that are by definition largely extraneous to those for which a defendant is on trial.

*Language of the Rule.* While Rule 404(b) does not define a person, it does state that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of *a person* in order to show action in conformity therewith." FED.R.EVID. 404(b) (emphasis added). Facially, Rule 404(b) is not limited to a defendant, but applies to "a person." The Ninth Circuit pointed out that the evidentiary rules pertaining to character were quite explicit:

> Rule 404(a) establishes the general rule excluding circumstantial use of character. It provides that evidence of "*a person's*" character is not admissible for the purpose of proving action in conformity therewith except for pertinent character traits of an "*accused*," Fed.R.Evid. 404(a)(1), a "*victim*," Fed.R.Evid. 404(a)(2), or a "*witness*," Fed.R.Evid. 404(a)(3), 607, 608, 609. It therefore appears that Congress knew how to delineate subsets of "persons" when it wanted to, and that it intended "a person" and "an accused" to have different meanings when the Rules speak of one rather than the other. Because Rule 404(b) plainly proscribes other crimes evidence of "a person," it cannot reasonably be construed as extending only to "an accused".[3]

In 1999, the Seventh Circuit embraced the application of Rule 404(b) to third parties in *Agushi v. Duerr*, 196 F.3d 754, 760 (7th Cir.1999). It took guidance from *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), in which the Supreme Court strongly suggested that Rule 404(b) should apply to any actor.[4] Several states have taken the

---

**3.** "Subject to the express exceptions in Rules 404(a)(1) through (3), the prohibition [of Rule 404(a)] applies to any person, party or non-party, principal actor or minor player, and the prohibition of the first sentence of Rule 404(b) applies to all parties." *United States v. McCourt*, 925 F.2d 1229, 1232, n. 2 (9th Cir.1991).

**4.** *See Agushi*, 196 F.3d at 760. *See also Huddleston v. United States*, 485 U.S. at 685–86,

108 S.Ct. 1496 ("Extrinsic evidence may be critical to the establishment of the truth as a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct. The actor in the instant case was a criminal defendant and the act in question was "similar" to the one with which he was charged. Our use of these terms is not meant to suggest that our analysis is limited to such circumstances.").

same view. Relying largely on text, for example, the Utah Supreme Court concluded that it was "obligated to define 'person' harmoniously throughout rule 404." *See State v. Vargas*, 20 P.3d 271, 278 (Utah 2001).

*Probative Evidence for the Defense.* It is a highly ordinary and appropriate feature of criminal trials that the person on trial points elsewhere: "I did not do it. Jones did it, and here's my evidence that he was the perpetrator."[5] Where a defendant has probative, admissible evidence that Jones did it, regular due process would admit the evidence. But what if the defendant has little or no direct evidence that Jones did it? Can the defendant offer evidence about Jones' prior bad acts as proof that Jones acted in conformity with his demonstrated character by committing the instant crime? We think the defendant may do so only when the exceptions of 404(b) apply. This appears to be the prevailing practice in the federal court circuits.[6]

Using similar principles, New Jersey's intermediate court examined a case bearing similarity to the one before us today. In *State v. Williams*, 214 N.J.Super. 12, 518 A.2d 234 (1986), an assault victim's statements identifying her attacker were contradictory, and Williams sought to admit testimony about similar crimes committed by someone named Dixon to prove that Dixon must have committed the instant crime. *Id.* at 236–37. The trial judge barred the evidence, holding that the prior assaults were not so similar as to establish that Dixon was the person who committed the assault for which Williams was on trial. The Appellate Division reversed, declaring itself satisfied that the similarities between the instant crime and the prior offenses were so strong that evidence of Dixon's prior bad acts was admissible on the question of identity.[7]

We think the foregoing cases represent an appropriate view of how the rule applies, and hold that the admissibility of evidence about prior bad acts by persons other than defendants is subject to Rule 404(b).

■ *Garland's claim.* Our appellant contends that Joseph's testimony about Lloyd's prior bad acts was admissible as evidence on identity and motive. If Joseph's evidence was probative on either of these, then it was admissible. If it was not, then the general policy of Rule 404(b)

---

**5.** The New Jersey Supreme Court characterized its conclusion about 404(b) in terms of a defendant's customary presentation of a defense: "It is well established that a defendant may use similar 'other crimes' evidence defensively if in reason it tends, alone or with other evidence, to negate his guilt of the crime charged against him." *See State v. Garfole*, 76 N.J. 445, 388 A.2d 587, 591 (1978), *aff'd* following remand, 80 N.J. 350, 403 A.2d 888 (1979).

**6.** *See United States v. Blum*, 62 F.3d 63, 68 (2nd Cir.1995) (rule 404(b) permits "admission against third parties of evidence of crimes, wrongs, or acts if used to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"); *United States v. Cohen*, 888 F.2d

770, 776 (11th Cir.1989) (where evidence "involves behavior of a witness other than a defendant ... the party advancing the evidence must demonstrate that it is not offered to prove the character of a person in order to show action in conformity therewith") (quoting Fed.R.Evid. 404(b)).

**7.** New Jersey has adopted a different standard for applying Rule 404(b) that varies depending on the identity of the proponent: "We are of the view, however, that a lower standard of degree of similarity of offenses may justly be required of a defendant using other-crimes evidence defensively than is exacted from the State when such evidence is used [incriminatingly]." *Garfole*, 388 A.2d at 591. Our present case does not necessitate that we decide whether to embrace such an approach.

against character evidence would apply and the trial court was correct to exclude it.

■ As for identity, Garland says that the "facts are so strikingly similar that one can say with reasonable certainty that Mr. Lloyd committed both offenses." (Appellant Br. at 24.) The test, of course, is whether the *crimes* are strikingly similar. *Davis v. State*, 598 N.E.2d 1041, 1047, n. 2 (Ind.1993). Here, the crimes were not even the same. The late Mr. Garland was shot dead in his trailer, and Joseph was at most the victim of intimidation in some other place and circumstance. That there were two threats does not make Garland's killing a "signature crime".

As for motive, evidence that (1) the Garlands had a deal with Lloyd, and (2) because Lloyd did not perform the Garlands demanded their money back, would provide a potential reason for Lloyd to kill Mr. Garland. Evidence that Joseph had asked Lloyd for *his* money back, however, would hardly give Lloyd a motive to kill *Mr. Garland.*

We conclude that the trial court was correct to bar Joseph's testimony.

## II.  Sufficient Evidence of Aiding or Inducing Murder?

■ When reviewing a claim of insufficient evidence, we consider the evidence most favorable to the verdict, along with all reasonable inferences to be drawn therefrom. *Coleman v. State*, 490 N.E.2d 325 (Ind.1986). Applying the appropriate standard of review, this Court will affirm if a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id.*

To convict Sharon Garland of aiding in murder, the State must prove beyond a reasonable doubt that she (1) intentionally or knowingly (2) aided, induced, or caused Allen or Lloyd to (3) kill David Garland.

*See* Ind.Code Ann. §§ 35–41–2–4, 35–42–1–1(1) (West 1998).

■ In determining whether a person aided another in the commission of a crime, this Court has long considered the following four factors: (1) presence at the scene of the crime; (2) companionship with another engaged in criminal activity; (3) failure to oppose the crime; and (4) a defendant's conduct before, during, and after the occurrence of the crime. *Johnson v. State*, 490 N.E.2d 333, 334 (Ind.1986). We examine each of these.

First, Sharon does not dispute that she was present at the scene when David was killed.

Second, there is an abundance of evidence that speaks to Sharon's companionship with James Lloyd. Sharon admittedly carried on a fairly open relationship with Lloyd since meeting him in 1994 as Allen's court-ordered drug counselor. This relationship developed during the period of Allen's counseling and continued even after Allen's counseling ended. When Lloyd came to the Garland's trailer on the night of the murder, Sharon went out in the cold, barefoot and without a coat, to meet him, after Allen announced Lloyd's arrival. It was Sharon who then accompanied Lloyd into the trailer where David was subsequently shot and killed.

The morning after David's murder, Sharon asked Marvin and Aline Busse, with whom she was staying, to place calls to Lloyd, and Lloyd returned the call within minutes. Lloyd was also present at the funeral home as Sharon made David's funeral arrangements. The abundance of evidence of Sharon and Lloyd's companionship leads to a reasonable inference that Sharon was a party to Lloyd's murder of her husband.

Third, nothing in the record suggests that Sharon opposed Lloyd's plan to mur-

der her husband. Sharon knew of Lloyd's plot no later than the morning of the murder, though from the nature of Sharon's companionship with Lloyd, she presumably knew of the plan much earlier. The fact that Sharon accompanied Lloyd into the trailer with knowledge of Lloyd's plan to kill David leads to a reasonable inference that Sharon did not oppose Lloyd's plan.

Fourth, Sharon's behavior before, during, and after the murder is also quite damning. On the weekend prior to David's murder, Sharon angrily blurted out during a card game that she would hire someone to kill him, take the insurance money, and go to Florida. Her recent purchase of the policy makes that declaration seem more tangible than would otherwise be the case. Sharon also told her friend Kay Bakain that "you could murder anybody in Starke County and get by with it cause the cops were all Barney Fifes." (R. at 3027.) Several days after the murder, Sharon met with Lloyd privately. When she returned, Allen asked her, "How much do you owe him, $10,000 or $5,000?" Sharon responded, "I will take care of it all later." (R. at 2910.) These statements and incidents lead to a reasonable inference that Sharon hired Lloyd to kill David.

Considering the four factors in determining accomplice liability, and the substantial evidence the State presented against Sharon, we conclude there was sufficient evidence to convict Sharon of aiding in the murder of her husband David Garland.

### III. Denial of Sharon's Motion for Change of Judge

■ Sharon asserts the trial court erred in denying her motion for change of judge.

Sharon's motion noted that Judge Matsey presided in her first trial and that he: (1) heard all of the evidence offered in this case before; (2) denied a motion for direct-ed verdict finding that there was sufficient evidence to support a finding of guilty; (3) denied a motion for judgment on the evidence finding there was sufficient evidence to permit a reasonable jury to convict; (4) sentenced Sharon to a term of fifty-five years on these charges; (5) held Sharon in contempt for failure to answer questions about James Lloyd's involvement in the murder. She also cites this Court's reversal of her conviction.

■ Either party may move for a change of judge when a conviction is reversed on appeal and a new trial ordered. See Ind.Code Ann. § 34–35–4–2(b) (West 1998). The standard under which the motions are granted or denied is contained in Ind.Crim. Rule 12(B): "The request shall be granted if the historical facts recited in the affidavit support a rational inference of bias or prejudice."

Sharon contends that the facts enumerated in her affidavit support a rational inference of prejudice since Judge Matsey had already made conclusions on the merits of Sharon's case. Sharon further contends that bias and prejudice are established anytime a trial judge has been reversed and the case remanded for new trial; she says a change of judge should thus be granted automatically upon the timely filing of a motion. (Appellant's Br. at 19.)

■ A motion for change of judge, however, is neither "automatic" nor "discretionary". *Sturgeon v. State*, 719 N.E.2d 1173, 1181 (Ind.1999). "In considering a motion for change of judge, the trial judge is required to examine the affidavit, treat the facts recited in the affidavit as true, and determine whether the facts support a rational inference of bias or prejudice." *Id.* (citing *State ex rel. Whitehead v. Madison County Circuit Court*, 626 N.E.2d 802, 803 (Ind.1993)).

Sharon contends the trial judge was prejudiced against her primarily based on the judge's prior rulings against her in the first case before him. However, prejudice is not derived from judicial rulings. "Generally, a trial judge's exposure to evidence through judicial sources is, alone, insufficient to establish bias." *Sturgeon*, 719 N.E.2d at 1181 (citing *Paradis v. Arave*, 20 F.3d 950, 958 (9th Cir.1994), *cert. denied*, 513 U.S. 1117, 115 S.Ct. 915, 130 L.Ed.2d 796 (1995)). Moreover, the fact that a defendant has appeared before a certain judge in prior cases does not establish the existence of bias or prejudice. *Lasley v. State*, 510 N.E.2d 1340, 1341 (Ind.1987) (citing *Brim v. State*, 471 N.E.2d 672, 674 (Ind.1984)); *Clemons v. State*, 424 N.E.2d 113, 117 (Ind.1981). A showing of prejudice that calls for a change of judge must be established from personal, individual attacks on a defendant's character, or otherwise. A defendant cannot merely assert prejudice on the grounds that the judge has ruled against her in a prior proceeding.

The ruling on a motion for change of judge is reviewed under the clearly erroneous standard. *Sturgeon*, 719 N.E.2d at 1182. The law presumes that a judge is unbiased and unprejudiced. *Lasley*, 510 N.E.2d at 1341. Garland has not overcome that presumption.

### Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.