## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 03 2015, 9:12 am
CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Michael C. Borschel | Gregory F. Zoeller |
| Fishers, Indiana | Attorney General of Indiana |
| | Kenneth E. Biggins |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Elijah Moore, | March 3, 2015 |
| *Appellant-Defendant,* | Court of Appeals Cause No. 49A02-1408-CR-587 |
| v. | |
| State of Indiana, | Appeal from the Marion Superior Court |
| *Appellee-Plaintiff.* | Honorable Marc T. Rothenberg, Judge |
| | Case No. 49G02-1310-MR-65911 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Elijah Moore was convicted of felony murder and attempted robbery as a Class C felony. Moore appeals his convictions, raising

two issues for our review: (1) whether the trial court erred by denying Moore's motion for judgment on the evidence; and (2) whether there was sufficient evidence to convict Moore, where he claimed his acts were justified by defense of a third person. Concluding the denial of Moore's motion for judgment on the evidence was proper and that there was sufficient evidence to disprove Moore's claim of defense of a third person, we affirm.

## Facts and Procedural History

[2] In January 2013, Moore initiated a conversation with his girlfriend Kelsey Lang about his desire to rob someone and asked her if she knew of anyone he could rob. Lang told Moore that potential targets for a robbery were two men—Cory Harold and David McMiller—from whom she regularly purchased marijuana. Moore inquired as to McMiller's physical stature and whether he kept any weapons in his home. He also had Lang tell him where the two men hid their marijuana and explain the layout of their apartment.

[3] Two months later on March 6, 2013, Lang contacted Harold and McMiller about coming to their apartment to purchase marijuana that day. Harold was at work, but McMiller told Lang that he would leave the door unlocked for her. Shortly after Lang's conversation with McMiller, Moore contacted Lang and told her that he and Jordan Heath-Gentry wanted to buy some marijuana, and Lang gave him McMiller's address.

[4] Moore and Heath-Gentry drove across town to McMiller's apartment and entered through the unlocked front door. After the two men entered, Heath-Gentry drew a handgun and pointed it at McMiller, demanding money and marijuana. McMiller then began to fight both Moore and Heath-Gentry, during which time the gun fell to the floor. At some point, McMiller was able to retrieve a knife from the kitchen and cut Heath-Gentry's hand, causing him to bleed heavily. Moore picked up the gun off the floor and shot McMiller twice in the torso. Moore and Heath-Gentry then fled the apartment, taking McMiller's marijuana with them.

[5] When police arrived at McMiller's apartment, they found traces of Heath-Gentry's blood on the apartment's stairway bannister, porch, and sidewalk. The police also found that someone had ransacked the dresser drawers in Harold's bedroom and that a small amount of marijuana and approximately $100 was missing. No blood was found inside Harold's bedroom.

[6] In August 2013, Officer Chris Craighill obtained a warrant to gather DNA samples from Moore and Heath-Gentry. Officer Craighill showed Moore a picture of McMiller and told Moore his name came up in a homicide investigation, but Moore pretended not to recognize McMiller or know anything about a homicide at McMiller's apartment. However, Moore later gave a statement in October admitting that he shot McMiller but claiming that he did not know Heath-Gentry rode with him to McMiller's apartment with the intention of robbing McMiller.

On October 8, 2013, the State charged Moore with Count 1, felony murder, and Count 2, attempted robbery, a Class A felony. The charging information was later amended to add Count 3, intentional murder. A two-day jury trial began on June 30, 2014. At the close of the State's case-in-chief, Moore made a motion for judgment on the evidence, arguing the State failed to present evidence on the "knowingly" element of attempted robbery. The trial court denied Moore's motion, and the jury found Moore guilty of all three counts.

At sentencing, the trial court vacated Count 3 and reduced Count 2 to a Class C felony. Moore was sentenced to fifty-eight years on Count 1 and five years on Count 2, to be served concurrently. This appeal followed.

# Discussion and Decision

## I. Judgment on the Evidence

Moore claims the trial court erred by denying his motion for judgment on the evidence. We apply the same standard of review for a denial of a motion for judgment on the evidence as for a claim of insufficient evidence. *Jones v. State*, 472 N.E.2d 1255, 1259 (Ind. 1985). When reviewing a defendant's claim of insufficient evidence, the reviewing court will neither reweigh the evidence nor judge the credibility of the witnesses, and we must respect "the jury's exclusive province to weigh conflicting evidence." *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005) (citation omitted). We consider only the probative evidence and reasonable inferences supporting the verdict. *Id.* And we must affirm "if the probative evidence and reasonable inferences drawn from the evidence could

have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt." *Id.* (citation omitted).

[10] Moore maintains that there is no evidence that he "knowingly" committed the crime of attempted robbery. According to Moore, he drove to McMiller's apartment with Heath-Gentry only to purchase marijuana, and he did not know that Heath-Gentry intended to rob McMiller once they arrived.

[11] To prove Moore committed the crime of attempted robbery, the State was required to prove that he (1) took a substantial step toward (2) knowingly or intentionally (3) taking property from another person (4) by force or threat of force or by putting any person in fear. *See* Ind. Code § 35-41-5-1; Ind. Code § 35-42-5-1. A person acts "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so. Ind. Code § 35-41-2-2(b).

[12] In Indiana, there is no distinction between the criminal liability of a principal and an accomplice "who knowingly or intentionally aids, induces or causes another person to commit an offense . . . ." *See Wise v. State*, 719 N.E.2d 1192, 1198 (Ind. 1999) (quoting Ind. Code § 35-41-2-4). Factors considered in determining whether a person aided another in commission of a crime include "(1) presence at the scene of the crime; (2) companionship with another engaged in criminal activity; (3) failure to oppose the crime; and (4) a defendant's conduct before, during, and after the occurrence of the crime." *Garland v. State*, 788 N.E.2d 425, 431 (Ind. 2003).

[13]    The facts of this case are such that a jury could reasonably conclude that Moore knowingly participated in the crime of attempted robbery. Moore's predisposition for committing this particular crime is shown by Lang's testimony that Moore asked if she knew of anyone whom he could rob, and upon learning about Harold and McMiller's apartment, Moore asked about their physical stature, for a description of the apartment layout, and where they hid their drugs.

[14]    Consideration of the factors set out in *Garland* also allow for an inference that Moore was a willing participant. Moore was present at the crime scene for the entirety of the attempted robbery, and there is clear evidence of companionship between Moore and Heath-Gentry, as the two men were friends and drove together to McMiller's apartment. Moore's conduct during and after the crime would also allow the jury to infer his guilt. When McMiller and Heath-Gentry tussled, Moore aided Heath-Gentry and also fought against McMiller before eventually shooting him twice in the torso. Further, Moore stole marijuana from the apartment after shooting McMiller, contradicting his claim that he had no intent to rob McMiller. Finally, the police found no traces of Heath-Gentry's blood in Harold's ransacked bedroom, allowing for an inference that Moore—not Heath-Gentry—was the one who stole marijuana and money from Harold's room after McMiller was shot.

[15]    The evidence in this case was sufficient to allow the jury to find Moore guilty of attempted robbery. Therefore, the trial court did not err by denying Moore's motion for judgment on the evidence.

# II. Defense of a Third Person

[16] Second, Moore argues that his act of shooting McMiller was justified by his desire to defend Heath-Gentry. As to Moore's right to defend himself or a third person by way of deadly force, Indiana law provides:

> A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. However, a person:
>
> > (1) is justified in using deadly force; and
> > (2) does not have a duty to retreat;
>
> if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony.

[17] Ind. Code § 35-41-3-2(c). To prevail on a claim of self-defense or defense of a third person, the defendant must show that he: "(1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm." *Simpson v. State*, 915 N.E.2d 511, 514 (Ind. Ct. App. 2009) (quotation omitted), *trans. denied*. When a defendant claims defense of a third person, the State bears the burden of disproving at least one of the necessary elements beyond a reasonable doubt. *Id.* The State may do so either by affirmatively rebutting the claim of self-defense or by simply relying on the sufficiency of evidence presented in its case in chief. *Id.* Our standard of review is the same as it is for any claim of insufficient evidence. *Id.*

[18] Moore cannot succeed by claiming defense of a third person. There is sufficient evidence to prove that Moore went to McMiller's apartment with the intent to

rob him and that Moore and Heath-Gentry entered the apartment without permission from McMiller. Thus, Moore and Heath-Gentry were not in a place where they had a right to be at the time Moore shot McMiller. Furthermore, Heath-Gentry instigated the violence by pointing a gun at McMiller inside McMiller's own home, and Moore then willingly participated in the fight that eventually led to him shooting and killing McMiller. Under these circumstances, there is sufficient evidence to rebut Moore's defense of a third person claim.

## Conclusion

[19] Concluding there was sufficient evidence to prove Moore knowingly committed attempted robbery and to disprove Moore's claim of defense of a third person, we affirm.

[20] Affirmed.

Bailey, J., and Brown, J., concur.