## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 30 2019, 10:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Emilee L. Stotts
Marion, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ryan W. Burnworth,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 30, 2019

Court of Appeals Case No.
18A-CR-1265

Appeal from the Huntington
Superior Court

The Honorable Jennifer Newton,
Judge

Trial Court Cause No.
35D01-1701-F4-5

**Tavitas, Judge.**

## Case Summary

Ryan Burnworth challenges his two convictions for child molesting, Level 4 felonies. We affirm.

## Issue

Burnworth raises one issue on appeal, which we restate as whether the trial court erred by excluding evidence that another individual, instead of Burnworth, could have molested J.M.[1]

## Facts

J.M. lived in a trailer court in Huntington with his mother and stepfather, Burnworth. During the 2014-2015 school year when J.M. was in the fourth grade[2], Burnworth would awaken J.M. and help J.M. get ready for school while J.M.'s mother continued to sleep. After J.M. was ready for school, J.M. and Burnworth would go to the couch in the living room and lie down while waiting for the bus. J.M. would lie on the front of the couch, and Burnworth would lie behind J.M.

While lying on the couch, Burnworth would reach down J.M.'s pants and underwear by "wiggl[ing] his hands" and touch J.M. on his penis. Tr. Vol. II p. 202. On other occasions, Burnworth would touch J.M. on the outside of J.M.'s

---

[1] In his brief, Burnworth asserts that "excluding this evidence violated his [S]ixth and [F]ourteenth amendment rights to an effective defense." Appellant's Br. p. 9. Because we find that the denial of the admission of evidence was proper under the Indiana Rules of Evidence, we do not address this argument.

[2] J.M. would have been nine years old and turned ten years old during the school year.

underwear. While doing this, Burnworth would make comments to J.M. like "look at that" or "[i]t's getting bigger." *Id.* at 203. Simultaneously, J.M. could feel Burnworth's penis pressing against J.M.'s bottom through his clothes. J.M. stated that he often tried to stop these morning events by positioning himself on the couch to make it difficult for Burnworth to touch him.

[5] J.M. stated that these events occurred frequently, sometimes once or twice a week, and some weeks daily. J.M. testified that the touching would occur for approximately "fifteen [] minutes to a half an hour" in the mornings. *Id.* at 207. Burnworth instructed J.M. on more than one occasion not to tell anyone about the events that occurred.

[6] The following summer, J.M. went to live with his father and stepmother due to the incarceration of J.M.'s mother. J.M.'s stepmother stated that, shortly after J.M. began living with his father and stepmother, Burnworth would contact J.M.'s father and "demand[]" to see J.M. *Id.* at 239. In December 2016, J.M. disclosed to his stepmother that Burnworth molested him. At that point, J.M.'s stepmother and father contacted the police.

[7] On January 6, 2017, Burnworth was charged with two counts of child molesting, Level 4 felonies, under Indiana Code Section 35-42-4-3(b). A jury trial was conducted in March 2018. At the beginning of the trial, the State made a motion in limine to preclude Burnworth from "introducing evidence or testimony that involves Travis Holley having been convicted of child

molestation in 2015." *Id.* at 59. According to Burnworth, Holley was J.M.'s "big brother" in the Big Brother Big Sister program.

[8] The State argued its motion was based on Indiana Rules of Evidence 401, 403, and 412. The trial court granted the State's motion in limine stating "there's no evidence suggest[ing] that the victim . . . is confused or that the molestation was against [J.M.] as it relates to Travis Holley." *Id.* at 67. Accordingly, the trial court prohibited Burnworth or his counsel "from commenting on or making any direct or indirect mention whatsoever to Travis Holley or that he had access to . . . the child in this case." *Id.*

[9] During the trial, Burnworth's attorney made an offer of proof regarding the evidence related to Holley. Detective Shane Blair with the Huntington City Police Department testified during the offer of proof regarding the investigation of the child molestation allegations against Holley. Detective Blair's police report was entered into evidence as part of the offer of proof. Burnworth also testified for purposes of the offer of proof. According to Burnworth, Holley and J.M had regular contact, and the two would be alone together at times, with Holley even visiting J.M. at the residence.[3] Burnworth also stated that, about a week after J.M.'s mother was arrested, Holley sent Burnworth a text message asking "what was going on with [J.M.]" after Holley discovered J.M.'s mother was arrested. Tr. Vol. III p. 52. Burnworth added that Holley told Burnworth

---

[3] Burnworth did state that, to his knowledge, Holley never came over before J.M. went to school in the mornings. Burnworth also was not aware of a time Holley was lying on the couch behind J.M during a visit.

that he needed to speak to J.M. because Holley "[wanted to] let [J.M.] know it wasn't [Holley's] fault." *Id.* After the offer of proof, the trial court maintained that it would deny admission of the evidence regarding Holley because Burnworth "has not shown in any way that the evidence is relevant or that any probative value would outweigh the prejudicial effect." *Id.* at 54.

[10] Subsequently, Detective Blair testified regarding an interview he had with Burnworth regarding J.M.'s allegations in January 2017. During the interview, Burnworth told the officer that, at times, he would have to assist J.M. in turning on and off the shower, and "while [Burnworth] was in there, he'd take it upon himself to dry off [J.M.], and he may have touched [J.M.'s] penis during that time." *Id.* at 73. Burnworth, also told police[4] that he "admitted to retaliating against [J.M.] for striking [Burnworth's] genitals by reaching in [J.M.'s] pants and wrongfully squeezing or harming [J.M.'s] genitals or a playful touching that could have been charged as a battery." Appellant's Br. p. 7.

[11] The jury found Burnworth guilty of both counts of child molesting, Level 4 felonies. Burnworth now appeals.

## Analysis

[12] Burnworth argues that the trial court erred "when it suppressed exculpatory evidence that was offered to rebut the claims that the appellant was the

---

[4] We attempted to review the audio recording of the interview with police provided as State's Exhibit 1; however, the disc appeared to be corrupted and we were unable to listen to the audio. Accordingly, we instead cite Burnworth's characterization of his own admission from his brief.

perpetrator in molesting the victim." Appellant's Br. p. 10. Burnworth claims that, had he been able to present this evidence, it "would have shown that another man, namely, Travis Holley, who had one on one weekly contact with the victim, was charged with and ultimately convicted of child molestation in which the crime occurred during the same charging period as this case, with factually similar allegations." *Id.* at 12.

[13] The State, during the motion in limine arguments, argued that the evidence was precluded under Indiana Rule of Evidence 412, and was inadmissible due to the "relevance Rules of Evidence [] 401 and 403." Tr. Vol. II p. 66. In its brief, the State also argues that the evidence was inadmissible under Indiana Rule of Evidence 404(b).

[14] A trial court has broad discretion in ruling on the admissibility of evidence, and we disturb those rulings only upon an abuse of that discretion. *Carr v. State*, 106 N.E.3d 546, 552 (Ind. Ct. App. 2018), *trans. denied*. An abuse occurs only where the trial court's decision is clearly against the logic and effect of the facts and circumstances. *Cole v. State*, 997 N.E.2d 1143, 1145 (Ind. Ct. App. 2013). There is a strong presumption that the trial court properly exercised its discretion. *Warner v. State*, 773 N.E.2d 239, 247 (Ind. 2002). We will not reverse a trial court's evidentiary ruling if we may sustain it on any ground. *See Crawford v. State*, 770 N.E.2d 775, 780 (Ind. 2002).

[15] Indiana Rule of Evidence 401 states:

Evidence is relevant if:

> (a) it has any tendency to make a fact more or less probable than
> it would be without the evidence; and

> (b) the fact is of consequence in determining the action.

Indiana Rule of Evidence 403, however, puts limits on relevancy, stating:

> The court may exclude relevant evidence if its probative value is
> substantially outweighed by a danger of one or more of the
> following: unfair prejudice, confusing the issues, misleading the
> jury, undue delay, or needlessly presenting cumulative evidence.

[16] Burnworth argues that the purpose of introduction of the evidence was "to impeach and prove that someone else other than [Burnworth] perpetrated the crime against J.M." and to "bolster [Burnworth's] defense of innocence." Appellant's Br. p. 14, 16. The relevance, according to Burnworth, was mainly to negate the element of the crime that requires the jury to find that Burnworth, and not another person, was the person who molested J.M.

[17] We disagree with Burnworth that this evidence was relevant. Importantly, there was never any allegation or evidence that J.M. was unsure of the identity of the person who touched him. J.M., who maintained that the molestations occurred in the home he shared with Burnworth, consistently described Burnworth as the person who molested him, including a description of the pajama pants that Burnworth would wear when they were together on the couch in the mornings. Second, although Holley appeared to interact on a somewhat regular basis with J.M., the evidence demonstrated that Holley did not visit J.M.'s home in the mornings. The only connection between the

allegations against Holley and Burnworth's case is that Holley interacted with J.M. The trial court did not abuse its discretion when it found this evidence was not relevant.

[18]	Even if this evidence was in some way relevant, it was not admissible under the parameters set in Indiana Rule of Evidence 404(b). Although Burnworth does not address this rule in his brief, the State does. Evidence Rule 404(b) provides:

> Crimes, Wrongs, or Other Acts.
>
> (1) *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) *Permitted Uses; Notice in a Criminal Case.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:
>
>> (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
>>
>> (B) do so before trial--or during trial if the court, for good cause, excuses lack of pretrial notice.

Ind. R. Evid. 404 (emphasis supplied).

[19] In *Camm v. State,* our Supreme Court addressed the introduction of evidence regarding a third party's prior bad acts. 908 N.E.2d 215, 230 (Ind. 2009). Our Supreme Court stated that a "prior crime of a third party must be 'strikingly similar' to the current crime to be probative of identity." *Camm,* 908 N.E.2d at 231 (quoting *Garland v. State,* 788 N.E.2d 425, 431 (2003)). "Specifically, the inquiry is whether the crimes are so strikingly similar that one can say with reasonable certainty that one and the same person committed them?" *Id.* (citations and quotations omitted). "Not only must the methodology of the two crimes be strikingly similar, but the method must be unique in ways which attribute the crimes to one person." *Id.* (citations and quotations omitted).

[20] The child in Holley's case stated he was staying with Holley when the child woke up and observed Holley putting the child's hand on Holley's penis. When the child pulled his hand away, Holley stated that he unconsciously moved the child's hand in his sleep. The child tried to take Holley's phone because he wanted to go home, but Holley took the phone away from the child, and asked the child not to tell anyone about the incident.[5] We disagree with Burnworth that there are similarities in the two accounts that make the accusations against Holley admissible. *See Lashbrook v. State,* 762 N.E.2d 756 (Ind. 2002) (concluding that the defendant failed to present material evidence that

---

[5] The exhibits include several redactions over what we believe to be the child's name. We are uncertain, however, if there were two separate incidents involving the same or different children. Regardless, the two paragraphs in the police report are very similar versions of the events.

connected a third party to the crime, other than the alleged statement that the victim "was gonna die," which did not connect the third party to the crime).

[21] The evidence of Holley's conduct was not relevant to the issue of whether Burnworth molested J.M. The identity of the perpetrator was never at issue. Regardless, the evidence was impermissible under Indiana Rule of Evidence 404(b). The trial court did not abuse its discretion in granting the State's motion in limine and declining to admit evidence regarding the allegations of child molestation against Holley.[6]

## Conclusion

[22] The trial court did not abuse its discretion in granting the State's motion in limine and declining to admit the evidence. We affirm.

[23] Affirmed.

Baker, J., and May, J., concur.

---

[6] Accordingly, we decline to address Burnworth's argument under Indiana Rule of Evidence 412.