## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 20 2019, 7:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Kristopher Lambright
Westville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kristopher Lambright,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

December 20, 2019

Court of Appeals Case No.
19A-PC-482

Appeal from the Allen Superior Court

The Honorable Wendy Davis, Judge

Trial Court Cause No.
02D04-1805-PC-36

**Tavitas, Judge.**

# Case Summary

Kristopher Lambright appeals the post-conviction court's ("PC Court") denial of his petition for post-conviction relief ("PCR"). We affirm.

# Issues

Lambright raises numerous issues, which we consolidate and restate as:

 I. Whether Lambright is entitled to present freestanding claims.

 II. Whether error occurred during the post-conviction proceedings.

 III. Whether Lambright was denied the effective assistance of counsel.

 IV. Whether Lambright's trial counsel had a conflict of interest.

 V. Whether Lambright's guilty plea was knowing, voluntary, and intelligent.

# Facts

On January 26, 2017, the State charged Lambright with possession of methamphetamine, a Level 5 felony, and resisting law enforcement, a Class A misdemeanor. On August 15, 2017, Lambright pleaded guilty as charged. Pursuant to the plea agreement, on September 22, 2017, the trial court sentenced Lambright to concurrent sentences of five years suspended for the possession of methamphetamine conviction and one year suspended for the resisting law enforcement conviction with three years on probation. The State filed petitions to revoke Lambright's probation on October 3, 2017, and April 5,

2018. On April 9, 2018, the trial court revoked Lambright's probation and ordered him to serve his previously suspended sentence in the Department of Correction.

[4] On May 4, 2018, Lambright filed a pro se petition for PCR, which he later amended.[1] On July 11, 2018, the State filed a motion to require Lambright to submit his case by affidavit pursuant to Indiana Post-Conviction Rule 1(9)(b), which the PC Court granted. The PC Court granted Lambright until September 28, 2018, to submit his case by affidavit. Because the public defender and another attorney failed to timely comply with the PC Court's orders to produce Lambright's file, the PC Court granted Lambright until November 5, 2018, to submit his case by affidavit. Lambright did not submit additional affidavits. The PC Court then entered findings of fact and conclusions of law denying Lambright's petition for PCR. Lambright now appeals.

## Analysis

[5] Lambright appeals the PC Court's denial of his petition for PCR. Post-conviction proceedings are civil proceedings in which a petitioner may present limited collateral challenges to a conviction and sentence. *Gibson v. State*, 133 N.E.3d 673, 681 (Ind. 2019); Ind. Post-Conviction Rule 1(1)(b). The petitioner

---

[1] Although the Public Defender of Indiana later filed an appearance, the appearance was withdrawn on July 10, 2018, and Lambright proceeded pro se.

bears the burden of establishing his claims by a preponderance of the evidence. *Gibson*, 133 N.E.3d at 681; P-C.R. 1(5). When, as here, the petitioner appeals from a negative judgment denying post-conviction relief, he "must establish that the evidence, as a whole, unmistakably and unerringly points to a conclusion contrary to the post-conviction court's decision." *Gibson*, 133 N.E.3d at 681. When a petitioner fails to meet this "rigorous standard of review," we will affirm the post-conviction court's denial of relief. *Id.* Under this standard of review, "[we] will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion." *Pruitt v. State*, 903 N.E.2d 899, 905 (Ind. 2009).

### I. Freestanding Claims

Lambright argues that: (1) he was subjected to double jeopardy violations when initial charges against him were dismissed and recharged under a different cause number; (2) he was not given the opportunity to review his presentence investigation report before sentencing; and (3) he was not allowed unencumbered access to discovery during the trial court proceedings.

"It is well settled that a person who pleads guilty cannot challenge the propriety of the resulting conviction on direct appeal; he or she is limited on direct appeal to contesting the merits of a trial court's sentencing decision, and then only where the sentence is not fixed in the plea agreement." *Alvey v. State*, 911 N.E.2d 1248, 1249 (Ind. 2009). "When a judgment of conviction upon a guilty plea becomes final and the defendant seeks to reopen the proceedings, the

inquiry is normally confined to whether the underlying plea was both counseled and voluntary." *Id.* Lambright's freestanding claims can only be considered when framed as a claim of ineffective assistance of counsel or as part of his claim that his guilty plea was not knowing, voluntary, and intelligent. *See, e.g., Mays v. State*, 790 N.E.2d 1019, 1022 (Ind. Ct. App. 2003) (holding that, "by pleading guilty, Mays waived his right to directly challenge his convictions as violative of double jeopardy"); *Alvey*, 911 N.E.2d at 1251 (holding that the defendant's "guilty plea foreclosed his right to appeal the denial of the motion to suppress"). The PC Court properly denied Lambright relief on his freestanding claims of error.

## II. Post-Conviction Procedures

[8] Lambright makes several arguments concerning the procedures used during his post-conviction proceedings. We will address each separately.

### A. Change of Judge

[9] Lambright argues that the PC Court erred by denying his motion for change of judge. "The ruling on a motion for change of judge is reviewed under the clearly erroneous standard." *Garland v. State*, 788 N.E.2d 425, 433 (Ind. 2003). Indiana Post-Conviction Rule 1(4)(b) provides in part:

> Within ten [10] days of filing a petition for post-conviction relief under this rule, the petitioner may request a change of judge by filing an affidavit that the judge has a personal bias or prejudice against the petitioner. The petitioner's affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be accompanied by a certificate from the

attorney of record that the attorney in good faith believes that the historical facts recited in the affidavit are true. A change of judge shall be granted if the historical facts recited in the affidavit support a rational inference of bias or prejudice. For good cause shown, the petitioner may be permitted to file the affidavit after the ten [10] day period.

[10] Under the rule, the PC Court is disqualified from hearing a case only if the judge holds "a personal bias or prejudice." Ind. Post-Conviction Rule 1(4)(b). "Typically, a bias is 'personal' if it stems from an extrajudicial source—meaning a source separate from the evidence and argument presented at the proceedings." *Lambert v. State*, 743 N.E.2d 719, 728 (Ind. 2001), *cert. denied*, 534 U.S. 1136, 122 S. Ct. 1082 (2002). The court's adverse rulings on judicial matters do not indicate a personal bias toward a defendant. *Harrison v. State*, 707 N.E.2d 767, 790 (Ind. 1999), *cert. denied*, 529 U.S. 1088, 120 S. Ct. 1722 (2000).

[11] On May 7, 2018, Lambright filed a motion for change of judge, which the PC Court denied. In his motion, however, Lambright noted that he was not accusing the PC Court judge of "any wrongdoing." Appellant's App. Vol. II p. 125. Lambright stated, "From what I've seen she is kind and conscientious . . . . It just so happens that I am convinced she has the wrong impression of me, and has ruled according to that impression in my case." *Id.* at 126. Lambright

failed to allege any personal bias or prejudice by the PC Court judge, and the PC Court did not abuse its discretion by denying Lambright's motion.[2]

### B. Lack of Evidentiary Hearing

[12] Lambright argues that the PC Court should have held an evidentiary hearing on his petition for PCR. Lambright relies on Indiana Post-Conviction Rule 1(4)(g), which provides:

> The court may grant a motion by either party for summary disposition of the petition when it appears from the pleadings, depositions, answers to interrogatories, admissions, stipulations of fact, and any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The court may ask for oral argument on the legal issue raised. If an issue of material fact is raised, then the court shall hold an evidentiary hearing as soon as reasonably possible.

[13] The State, however, requested that Lambright submit his case by affidavit pursuant to Indiana Post-Conviction Rule 1(9)(b), which provides in part:

> In the event petitioner elects to proceed pro se, the court at its discretion may order the cause submitted upon affidavit. It need not order the personal presence of the petitioner unless his

---

[2] On appeal, Lambright adds additional allegations based on occurrences during the post-conviction proceedings. It appears that these events occurred after Lambright filed his motion for change of judge. There is no indication that Lambright renewed his motion or that the events were the result of bias or prejudice by the trial court judge.

presence is required for a full and fair determination of the issues raised at an evidentiary hearing.

This rule "clearly and plainly provides that when a petitioner proceeds pro se, the PCR court has the discretion to order the cause submitted upon affidavit." *Smith v. State*, 822 N.E.2d 193, 201 (Ind. Ct. App. 2005), *trans. denied*. "[I]f the PCR court orders the cause submitted by affidavit under Rule 1(9)(b), it is the court's prerogative to determine whether an evidentiary hearing is required, along with the petitioner's personal presence, to achieve a 'full and fair determination of the issues raised[.]'" *Id.*

> [W]here the PCR court orders the parties to proceed by affidavit under Rule 1(9)(b), the court may also determine that the petitioner's personal presence at an evidentiary hearing is required. But we hold that the decision whether to hold an evidentiary hearing for a "full and fair determination of the issues raised," like the decision to proceed by affidavit, is best left to the PCR court's discretion. . . . [C]onsistent with our holding in [*Fuquay v. State*, 689 N.E.2d 484, 486 (Ind. Ct. App. 1997), *trans. denied*], we will review the PCR court's decision to forego an evidentiary hearing when affidavits have been submitted under Rule 1(9)(b) under an abuse of discretion standard.

*Id.*

[14] According to Lambright, genuine issues of material fact existed, which warranted an evidentiary hearing. Lambright, however, has failed to specifically identify any of the alleged genuine issues of material fact and failed to demonstrate that an evidentiary hearing was necessary for a full and fair

determination of the issues. The PC Court did not abuse its discretion by requiring Lambright to submit his case by affidavit.

## C. Discovery

[15] Next, Lambright argues that he was not provided with requested discovery during his post-conviction proceedings. We will not reverse a PC Court's decision on discovery absent an abuse of discretion. *Harris v. State*, 762 N.E.2d 163, 169 n.4 (Ind. Ct. App. 2002), *trans. denied*.

[16] The PC Court granted Lambright until September 24, 2018, to submit his affidavits. When Lambright filed a motion to compel the Public Defender and his former attorney to produce portions of his case file, the PC Court granted the motion to compel and extended the deadline for Lambright to submit affidavits to November 5, 2018. On October 9, 2018, Lambright's former attorney filed a notice of compliance notifying the PC Court that Lambright's file was mailed to Lambright on October 4, 2018. Lambright did not amend his previously filed affidavits and did not file any new affidavits.

[17] Lambright fails to show that a discovery violation occurred or, even if such a violation occurred, how he was prejudiced. Lambright has failed to demonstrate that the PC Court abused its discretion.

## III. Ineffective Assistance of Trial Counsel

[18] Lambright appeals the PC Court's denial of his claim of ineffective assistance of trial counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his or her counsel's performance was

deficient and that the petitioner was prejudiced by the deficient performance. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)), *cert. denied*, 534 U.S. 830, 122 S. Ct. 73 (2001).

[19]  A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Woodson v. State*, 961 N.E.2d 1035, 1041 (Ind. Ct. App. 2012), *trans. denied*. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *McCullough v. State*, 973 N.E.2d 62, 74 (Ind. Ct. App. 2012), *trans. denied*. "[A] defendant must offer strong and convincing evidence to overcome this presumption." *Id.* Isolated poor strategy, inexperience, or bad tactics do not necessarily constitute ineffective assistance. *Id.*

[20]  In analyzing prejudice in the context of a guilty plea, we review such ineffective assistance of counsel claims under *Bobadilla v. State*, 117 N.E.3d 1272, 1287 (Ind. 2019). "[T]he prejudice inquiry is a subjective test, turning upon whether that particular defendant's special circumstances support his claim that, had he been properly advised, he would have rejected the plea and insisted on going to trial." *Bobadilla*, 117 N.E.3d at 1287. "[T]he ultimate result at trial (conviction versus acquittal) is not the determinative factor in these prejudice inquiries . . . ." *Id.*

Here, Lambright claims that his trial counsel was ineffective by failing to: (1) properly communicate with Lambright; (2) conduct a thorough, independent investigation of the offense; (3) interview and/or depose witnesses; and (4) inform Lambright of the grounds for requesting a withdrawal of his guilty plea. Lambright also seems to argue that his trial counsel coerced him into entering a guilty plea.

Lambright has failed to present any special circumstances whatsoever that he would not have pleaded guilty if his trial counsel had performed differently. In fact, we note that the trial court expressed reluctance to approve the plea agreement because it was so favorable to Lambright. The PC Court's denial of Lambright's ineffective assistance of counsel claim is not clearly erroneous.

### IV. Conflict of Interest

Lambright also claims that his trial counsel had a conflict of interest because: (1) he was responsible for one hundred sixty-four open cases at the time; (2) "Lambright's case would have provided counsel with a delayed and reduced payment compared to cases wherein Counsel was retained"; and (3) the deputy prosecutor later entered into private practice with trial counsel. Appellant's Br. p. 35.

The constitutional right to effective assistance of counsel includes representation free from conflicts of interests. *Gibson v. State*, 133 N.E.3d 673, 698 (Ind. 2019) (citing *Wood v. Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 1103 (1981)). To prevail on a claim of conflict of interest, the defendant must

demonstrate to the post-conviction court that trial counsel had an actual conflict of interest and that the conflict adversely affected counsel's performance. *Shepherd v. State*, 924 N.E.2d 1274, 1287 (Ind. Ct. App. 2010), *trans. denied*.

> An adverse effect on performance caused by counsel's failure to act requires a showing of (1) a plausible strategy or tactic that was not followed but might have been pursued; and (2) an inconsistency between that strategy or tactic and counsel's other loyalties, or that the alternate strategy or tactic was not undertaken due to the conflict.

*Id.* Lambright has presented no evidence that his trial counsel had an actual conflict of interest or that the alleged conflict adversely affected counsel's performance.

[25] Moreover, even if a petitioner demonstrates an actual conflict that adversely affected counsel's performance, we must still determine whether prejudice exists. In *Gibson*, our Supreme Court considered whether the defendant is required to show prejudice in a conflict-of-interest claim or whether such prejudice is presumed. *See Gibson*, 133 N.E.3d at 698-99 (comparing the presumption of prejudice standard in *Cuyler v. Sullivan*, 446 U.S. 335, 349-50, 100 S. Ct. 1708, 1719 (1980), with the prejudice standard in *Strickland*). The Court noted that conflict-of-interest claims typically arise where counsel represented multiple defendants in the same case, "because of counsel's representation of a hostile witness, because of counsel's personal legal problems, or because of counsel's previous role as judge pro tempore in the same case." *Id.* at 699.

> Not all conflicts of interest, however, present the same concerns. Unlike the high risk of harm imposed on at least one client in multiple-representation cases, a conflict implicating counsel's personal interests only (e.g., media rights or future referrals) need not compromise the duty of loyalty—that is, counsel may still act in the client's best interest even if detrimental to counsel's best interest. So, the question is whether a particular conflict-of-interest claim warrants application of the lower burden under *Cuyler* or the traditional prejudice standard under *Strickland*.

*Id.* The Court concluded that Gibson's conflict of interest argument fell under the standard *Strickland* analysis for prejudice. *Id.*

[26] Gibson's conflict of interest argument was similar to Lambright's argument. Gibson argued that "his cases proceeded under a conflict of interest, the loyalties of trial counsel divided between Gibson himself and the Floyd County Public Defender's Office" and that "[e]ffective legal representation in a resource-consuming capital case . . . stands irreconcilably at odds with trial counsel's duty, as Chief Public Defender, to ensure the efficient administration of public funds." *Id.* at 698. As a result, we also conclude that Lambright's conflict of interest argument falls under the standard *Strickland* analysis for prejudice. Lambright has failed to identify any prejudice whatsoever as a result of the alleged conflicts of interest. The PC Court's denial of this claim is not clearly erroneous.

### V. Voluntary Guilty Plea

[27] Finally, Lambright argues that his guilty plea was not knowing, intelligent, and voluntary. "A valid guilty plea depends on 'whether the plea represents a

voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Gibson*, 133 N.E.3d at 697 (quoting *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S. Ct. 366, 369 (1985)). In furtherance of this objective, the Indiana Code 35-35-1-2 provides, in part, that the court accepting the guilty plea shall determine whether the defendant: (1) understands the nature of the charges; (2) has been informed that a guilty plea effectively waives several constitutional rights, including trial by jury, confrontation and cross-examination of witnesses, the right to subpoena witnesses, and proof of guilt beyond a reasonable doubt without self-incrimination; and (3) has been informed of the maximum and minimum sentence for the crime charged. *See Diaz v. State*, 934 N.E.2d 1089, 1094 (Ind. 2010). In assessing the voluntariness of the plea, we review "all the evidence before the post-conviction court, 'including testimony given at the post-conviction trial, the transcript of the petitioner's original sentencing, and any plea agreements or other exhibits which are part of the record.'" *Id.* (quoting *State v. Moore*, 678 N.E.2d 1258, 1266 (Ind. 1997), *cert. denied*, 523 U.S. 1079, 118 S. Ct. 1528 (1998)).

[28] According to Lambright, his guilty plea was not knowing, voluntary, and intelligent because: (1) he only read and signed the signature page of the plea agreement, not the first page, which contained ten terms and conditions; (2) he "had no opportunity to discuss the written plea with Counsel because of the manner in which the written plea was presented to Lambright"; (3) "the Trial Court's purported threat to continue Lambright's trial for at least ninety (90) days, holding Lambright in jail for the duration of said continuance, coerced

Lambright into signing said guilty plea agreement/contract making it involuntary"; and (4) "Counsel's promise that Lambright would not be sentenced to HOPE probation was an improper inducement."[3]  Appellant's Br. pp. 37-38.

[29]  Lambright's claims are not supported by the record.  At the guilty plea hearing, the trial court advised Lambright of his rights, and the following discussion occurred:

> Q [Trial Court]  I have in front of me a plea agreement that appears to have your signature on it.  Did you sign it?
>
> A [Lambright]  Yes, Your Honor.
>
> Q  Did you read it before you signed it?
>
> A  Yes, Your Honor.
>
> Q  Did you discuss with your attorney before you signed it?
>
> A  Yes, Your Honor.
>
> Q  That reads: You'll be convicted and sentenced as a level 5 felony in count I and as a Class A misdemeanor in count II. Count I sentenced to five (5) years suspended; count II, to one (1) year suspended; placed on probation for three (3) years; counts shall run concurrent with each other.  The Court has the

---

[3] HOPE probation is a "one year intense probation supervision program" operated by the Allen Superior Court.  *See* www.allensuperiorcourt.us/criminal/hope-program (last visited Dec. 11, 2019).

authority to impose any fines, costs, standard or special conditions of probation it deems proper; pay a $100.00 public defender fee.  Is that your understanding of the agreement?

A  Yes, Your Honor.

* * * * *

Q  Have you received any promises, other than the plea agreement, or been given anything of value to cause you to plead guilty?

A  No, Your Honor.

Q  Has anyone forced or threatened you to cause you to plead guilty?

A  No, Your Honor.

Q  Do you feel that your plea of guilty is your own free and voluntary act?

A  Yes, Your Honor.

Q  Are you satisfied with your attorney and do you feel that he is properly representing you?

A  Yes, Your Honor.

Tr. pp. 17-18.

[30] Although Lambright argues that he did not see the first page of the plea agreement, the first page of the plea agreement contained all of the terms of the agreement, i.e., the charges to which Lambright pleaded guilty, the sentences for both convictions, and the trial court's discretion to impose fines, costs, and standard and special conditions of probation. Moreover, the trial court reviewed these terms with Lambright at the guilty plea hearing. The transcript of the guilty plea hearing makes it clear that Lambright was not coerced into entering into the plea agreement and that Lambright was acting voluntarily. The PC Court concluded that Lambright "has not shown that his guilty plea was not entered knowingly, intelligently, and voluntarily." App. Vol. III p. 148. Lambright has failed to demonstrate that the PC Court's conclusion is clearly erroneous.

## Conclusion

[31] The PC Court's denial of Lambright's petition for PCR is not clearly erroneous. We affirm.

[32] Affirmed.

Brown, J., and Altice, J., concur.