**In the Matter of Steven C. LITZ.**

No. 55S00–9806–DI–330.

Supreme Court of Indiana.

Dec. 30, 1999.

Steven C. Litz, Monrovia, IN, for the Respondent.

Donald R. Lundberg, Executive Secretary, Robert C. Shook, Staff Attorney, Indianapolis, IN, for the Indiana Supreme Court Disciplinary Commission.

PER CURIAM.

The respondent, Steven C. Litz, defended a woman accused of neglect of a dependent. While a retrial of that case proceeded, the respondent caused to be published in several newspapers a letter which stated his client had committed no crime, criticized the prosecutor's decision to retry the case, and mentioned that his client had passed a lie detector test. For that, we find today that the respondent violated Ind.Professional Conduct Rule 3.6(a), which forbids attorneys from making extrajudicial statements which they know or reasonably should know have a substantial likelihood of materially prejudicing an adjudicative proceeding.

This case is now before us for approval of a *Statement of Circumstances and Conditional Agreement for Discipline* reached by the parties in resolution of this matter pursuant to Ind. Admission and Discipline Rule 23 § 11(c). Our jurisdiction here is a result of the respondent's admission to this state's bar on October 12, 1984.

The parties agree that the respondent represented a client in criminal proceeding in Morgan County in which a jury found the client guilty of neglect of a dependent resulting in serious bodily injury. The respondent represented the client in the appeal of her conviction and succeeded in obtaining a reversal of the conviction from the Indiana Court of Appeals. The Court of Appeals remanded the case to the trial court, finding that the lower court erred in determining that evidence of "battered women's syndrome" was irrelevant and inadmissible in the first trial.

After remand on June 2, 1997, the trial court set the matter for a new jury trial on November 3, 1997. On June 25, 1997, a "Letter to the Editor" written and submitted by the respondent appeared in the Bloomington, Indiana *Herald–Times* and the Mooresville, Indiana *Times*. An identical letter from the respondent appeared in the June 26, 1997, edition of the *Indianapolis Star*. The respondent's letter stated this his client had spent the "last 18 months in jail for a crime she did not commit" and revealed that she had passed a lie detector test. The letter also decried the decision to retry his client, characteriz-

ing it as "abominable."[1] On September 29, 1997, the respondent, on behalf of the client, filed a *Motion for Change of Venue* from Morgan County, citing "prejudicial pre-trial publicity." The court granted the motion.

Indiana Professional Conduct Rule 3.6(a) provides:

A lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding.

Indiana Professional Conduct Rule 3.6(b) provides that certain types of extrajudicial statements referred to in subsection (a) are "rebuttably presumed" to have a substantial likelihood of materially prejudicing an adjudicative proceeding, including the results of any examination or test,

any opinion as to the guilt or innocence of a defendant in a criminal case that could result in incarceration, or information that the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial. Prof.Cond.R. 3.6(b)(3), (4), (5).

Preserving the right to a fair trial necessarily entails some curtailment of the information that may be disseminated about a party prior to trial, particularly where trial by jury is involved. *Comment* to Prof.Cond.R. 3.6. The respondent's letters to area newspapers created a substantial likelihood of material prejudice to the pending jury retrial of the respondent's own client. Some of the statements contained therein presumptively presented that risk: his description of evidence that could have been inadmissible at trial (i.e., the fact and result of the lie detector test), and his opinion that his client did not commit the crime for which she was

1. The letter stated:

In a time when the public is fascinated with criminal trials and often perceives grave injustice being done to victims of crimes, I thought your readers would be interested to know that here in Morgan County, the prosecutor has elected to retry my client ... [h]er boyfriend ... murdered [her] daughter ... in October 1995. [The client] was subsequently charged with neglect of a dependent because she allegedly knew that leaving [her daughter] with [the boyfriend] would endanger her life.

She was convicted in January 1996 and sentenced to 20 years in prison, the maximum possible for the crime. Her conviction was recently reversed by the Indiana Court of Appeals because it said [the client] did not receive a fair trial due to the judge's refusal to allow her to present evidence that she suffered from battered woman's syndrome.

In the weeks preceding her daughter's murder, [the boyfriend] had beaten [the daughter] and allegedly raped [the client] at knifepoint. She reported the beating and rape to the Connersville police who, because they were friendly with [the boyfriend], released him at the scene of the alleged rape.

Ironically, [the client] was given a lie detector test (which she passed) to make sure that she had not hurt her daughter and that she had been raped. Fearful of her life, she moved away from [the boyfriend], only to return to him a week later.

Tragically but not surprisingly, she believed his promises to her that he would get help, that he would never harm [the daughter] again and that he would provide a life for her. Two weeks later, [the daughter] was brutally murdered.

[The client] has spent the last 18 months in jail for a crime she did not commit. Anyone who has the slightest familiarity with battered woman's syndrome knows that the batterer frequently promises to change, and all too often his victims accept those words—even when they come after one's child has been injured.

While the ability to say she could have left comes easily, the fact is that the single greatest difficulty for battered women is leaving their attackers. [The client] has come to learn this at the horrible expense of her daughter's life. Perhaps others in situations such as hers can learn from [her] that the time to leave is now, not after a life-altering event occurs.

The decision to re-prosecute [the client] is abominable. Our system of justice was never intended to repeatedly exact punishment from someone.

She has lost the dearest thing to her, and our citizens should voice their concern that she continues to be penalized for being the victim of a brutal, terrifying man who convinced her that her and her daughter's safety would be protected.

charged. Further, the respondent's identification of the prosecution's decision to retry the case as "abominable," despite the fact that retrial of the case was well within the prosecutor's discretion, tended to contribute to a pre-trial atmosphere prejudicial to the prosecution's case. In sum, the respondent's letters created an environment where a fair trial was much less likely to occur. Additionally, the respondent effectively set the stage for his own subsequent motion for change of venue based on prejudicial pre-trial publicity. Accordingly, we find that the respondent's published commentary created a substantial likelihood of materially prejudicing retrial of his client's criminal case, and thus violated Prof.Cond.R. 3.6(a).

The parties agree that the appropriate sanction for the misconduct is a public reprimand. Among the factors we consider in assessing the adequacy of that proposed sanction are aggravating and mitigating circumstances. *See, e.g., Matter of Christoff,* 690 N.E.2d 1135 (Ind.1997); *Matter of Darling,* 685 N.E.2d 1066 (Ind. 1997); *Matter of Conway,* 658 N.E.2d 592 (Ind.1995). In mitigation, the parties agree that the respondent has not previously been the subject of a disciplinary proceeding, that he cooperated with the Commission, and that he continued to represent the client through the resolution of her case. No factors in aggravation were cited.

We view the respondent's actions as a purposeful attempt to gain an unfair advantage in retrial of his client's case. Although the respondent had no real selfish motive (and instead apparently sought only to advocate zealously his client's cause), he nonetheless was bound to do so only within the bounds of our ethical rules. His public comments were inappropriate because they threatened or in fact impinged the prospect of a fair trial for his client. Whether extrajudicial statements of this sort warrant reprimand or suspension is fact sensitive. Here, we take into account the fact that the respondent's primary motivation appears to have been the welfare of his client. We are also cognizant while assessing the proposed sanction of our policy of encouraging agreed resolution of disciplinary cases. We find that, in this case, the agreed sanction of a public reprimand is appropriate.

Accordingly, the respondent, Steven C. Litz, is hereby reprimanded and admonished for the misconduct set forth above.

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the United States District Courts in this state, and the clerks of the United States Bankruptcy Courts in this state with the last known address of respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.