

FILED

Aug 23 2023, 10:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jimmy Gurulé
Kevin Murphy
Exoneration Justice Clinic
Notre Dame Law School
South Bend, Indiana

Robert Hochman
Minje Shin
*Admitted Pro Hac Vice*
Sidley Austin LLP
Chicago, Illinois

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Kelly A. Loy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Pink Allen Robinson,

*Appellant-Petitioner*

v.

State of Indiana,

*Appellee-Respondent.*

August 23, 2023

Court of Appeals Case No.
22A-PC-1102

Appeal from the Elkhart Superior
Court

The Honorable Teresa L. Cataldo,
Judge

Trial Court Cause No.
20C01-2012-PC-41

Court of Appeals of Indiana | Opinion 22A-PC-1102| August 23, 2023          Page 1 of 26

**Pyle, Judge.**

## Statement of the Case

[1] In 2016, the State charged Pink Robinson ("Robinson") with three counts of Level 3 felony robbery while armed with a deadly weapon. A jury convicted Robinson of all three counts in 2018, and the trial court sentenced him to an aggregate sentence of forty-eight years, with three years suspended. This Court affirmed Robinson's convictions and sentence on direct appeal. *See Robinson v. State*, No. 18A-CR-2212, 2019 WL 4924824 (Ind. Ct. App. Oct. 7, 2019), *trans. denied*. In 2020, Robinson filed a pro se petition for post-conviction relief. In October 2021, attorney Jimmy Gurulé ("Attorney Gurulé") filed an appearance on Robinson's behalf.[1] Also, in October 2021, Robinson filed a motion for a

---

[1] At the outset, in full transparency, we note that Attorney Gurulé, who is affiliated with Notre Dame Law School's Exoneration Justice Clinic ("the Clinic"), filed Robinson's appellate brief on September 8, 2022. On November 16, 2022, Attorney Gurulé gave a presentation to several judges on this Court. During this presentation, Attorney Gurulé spoke about the Clinic. He also spoke about one of the Clinic's cases, *Royer v. State*, 166 N.E.3d 380 (Ind. Ct. App. 2021). In *Royer*, this Court affirmed the post-conviction court's order that granted Royer's successive petition for post-conviction relief based on newly discovered evidence and *Brady* violations and vacated Royer's murder conviction. *Royer*, 166 N.E.3d at 405. In Robinson's appellate brief, Attorney Gurulé cites *Royer* in support of his argument that the post-conviction court erred in denying Robinson's motion for a change of judge. We note that none of the judges on this panel of Robinson's appeal attended Attorney Gurulé's presentation or discussed the *Royer* case with any of the judges who attended the presentation.

change of judge pursuant to Post-Conviction Rule 1(4)(b).[2] The post-conviction court denied Robinson's change of judge motion, and this interlocutory appeal concerns only the post-conviction court's denial of that motion.[3] Robinson specifically argues that the post-conviction court clearly erred when it denied his motion for a change of judge. Concluding that the post-conviction court did not clearly err, we affirm the post-conviction court's denial of Robinson's change of judge motion.[4]

We affirm.

## Issue

---

[2] Although Robinson's motion was titled a motion for recusal, we note that Post-Conviction Rule 1(4)(b) does not include the term recusal. Rather, Post-Conviction Rule 1(4)(b) uses the terms change of judge. We will, therefore, refer to Robinson's motion as a motion for a change of judge.

[3] We express no opinion on the merits of Robinson's post-conviction relief petition, which is pending before the post-conviction court.

[4] We note that Attorney Gurulé is also representing Iris Seabolt ("Seabolt") and Leon Tyson ("Tyson"), two other post-conviction petitioners who appealed the post-conviction court's denial of their change of judge motions. Seabolt's appeal was originally filed under Cause Number 22A-PC-208, and Tyson's appeal was originally filed under Cause Number 22A-PC-143. In May 2022, this Court's motions panel granted Attorney Gurulé's motion to consolidate these two appeals with Robinson's appeal.

Thereafter, in February 2023, Attorney Gurulé initiated an appeal for Reginald Dillard ("Dillard"), a fourth post-conviction petitioner who is appealing the post-conviction court's denial of his change of judge motion. Dillard's appeal was originally filed under Cause Number 23A-PC-261. The following month, March 2023, this Court's motions panel granted Attorney Gurulé's motion to consolidate Dillard's appeal into Tyson's appeal.

However, it is well-established that we have the inherent authority to reconsider a ruling by the motions panel while an appeal remains pending. *Beasley v. State*, 192 N.E.3d 1026, 1029 (Ind. Ct. App. 2022), *trans. denied*. Here, we have determined that a de-consolidation of these four appeals is necessary. Accordingly, we have returned each one to its original appellate cause number and will decide each appeal on its own merits. On August 11, 2023, we affirmed the post-conviction court's denial of Tyson's change of judge motion. *See Tyson v. State*, No. 22A-PC-143, 2023 WL 5158093 (Ind. Ct. App. Aug. 11, 2023).

Whether the post-conviction court clearly erred when it denied Robinson's motion for a change of judge.

## Facts

[3] In October 2021, Robinson, represented by Attorney Gurulé, filed a 29-page change of judge motion.[5] At the beginning of his motion, Robinson alleged as follows:

> There is an epidemic in Elkhart, Indiana where innocent people are wrongfully convicted as a result of systemic police misconduct, false and fabricated testimony, undisclosed promises of consideration to witnesses, faulty forensic evidence, and the widespread failure to disclose material exculpatory and impeachment evidence. These wrongful convictions are the byproduct of a culture of misconduct at the [Elkhart County Prosecutors Office] and [the Elkhart Police Department] that has spanned decades. Tragically, these unjust convictions often take years to unravel, leaving innocent men and women to languish in prison for crimes they did not commit.

(App. Vol. 9 at 150).

[4] In addition, Robinson specifically argued that the post-conviction court should grant his change of judge motion because the post-conviction court judge had been a deputy prosecutor in the Elkhart County Prosecutor's Office from 1998 until 2002. Robinson further argued that the post-conviction court should grant his motion for a change of judge because the post-conviction court's order in a

---

[5] In this motion, Robinson stated that he intended to amend his post-conviction petition "to add additional allegations and claims." (App. Vol. 9 at 148). However, he has not yet filed an amended petition.

prior unrelated case involving Andrew Royer ("Royer") had shown that the post-conviction court judge had "already prejudged allegations identical to Mr. Robinson's to be 'defamatory' and false, based not on evidence, but the Court's own extrajudicial prejudices and beliefs." (App. Vol. 9 at 164). Robinson also argued that because the post-conviction court had ultimately granted Royer's motion for a change of judge, the post-conviction court should grant Robinson's motion for a change of judge as well.

At this point, for a better understanding of Robinson's argument and the post-conviction court's response to this argument in its order denying Robinson's motion for a change of judge, we find it helpful to review the facts and history of Royer's case. A jury convicted Royer of murdering Helen Sailor ("Sailor") in 2005. In 2006, this Court affirmed Royer's conviction. *Royer v. State*, No. 20A03-0601-CR-14, 2006 WL 1634766 (Ind. Ct. App. May 31, 2006). In 2007, Royer filed a petition for post-conviction relief, which the post-conviction court denied after a hearing. This Court affirmed the denial. *Royer v. State*, No. 20A04-1106-PC-325, 2011 WL 6595351 (Ind. Ct. App. Dec. 20, 2011).

A few years later, in June 2013, Royer, represented by Attorney Elliot Slosar ("Attorney Slosar"), filed a motion for relief from judgment pursuant to Indiana Trial Rule 60(B).[6] Immediately after filing this motion, Attorney Slosar and Royer's family members gathered in front of the prosecutor's office for a press

---

[6] Slosar's petition for temporary admission to appear in Robinson's post-conviction proceeding is pending before the post-conviction court.

conference. During the press conference, Attorney Slosar stated that there was a "'systemic failure' and an 'epidemic' in Elkhart County where people [were] wrongfully convicted because of police corruption, uninspiring defense counsel and an overzealous prosecutor." (App. Vol. 3 at 57). Attorney Slosar also stated that "these factors contributed to Andrew Royer being convicted of a murder that he is absolutely innocent of." (App. Vol. 3 at 57). In addition, Attorney Slosar stated that "we have proven that [Royer's] conviction was an absolute fraud and the conviction was based on intentional misconduct." (App. Vol. 3 at 57). Attorney Slosar further referred to the pending Trial Rule 60(B) motion as an appeal and released videotapes of witnesses that would be testifying at the hearing on Royer's motion.

[7]     Following the press conference, the State filed a motion for an emergency hearing and a request for an injunction. In support of its motion, the State attached two newspaper articles from the South Bend Tribune. The headline for one of the articles, which is dated June 13, 2018, is "Mentally disabled man says shoddy policing, false statements led to Elkhart murder conviction." (No. 20D03-0309-MR-155, Chronological Case Summary, June 19, 2018 entry). The headline for the other article, which is dated June 14, 2018, is "Attorney of Andrew Royer blasts Elkhart police for 'miscarriage of justice.'" (No. 20D03-0309-MR-155, Chronological Case Summary, June 19, 2018 entry). Royer filed a response to the State's motion. Following a hearing, the trial court judge in Royer's case, who is the post-conviction court judge in Robinson's case, issued an order that provides, in relevant part, as follows:

9. Additionally, Slosar contends that he made no statements that violate Ind. Professional Conduct Rule 3.6, as only information contained in the public record was stated at the press conference, along with matters he has a constitutional right to say on behalf of Royer. The Court carefully reviewed the State's Motion, as well as Royer's Response, along with the various attachments referencing news articles about the conference. Particularly troubling to the Court were Slosar's statements at the subject press conference characterizing "'systemic failure' and an 'epidemic' in Elkhart County where people are wrongfully convicted because of police corruption, uninspiring defense counsel and an overzealous prosecutor." Slosar went on to say that "these factors contributed to Andrew Royer being wrongfully convicted of a murder that he is absolutely innocent of." Slosar also stated that "we have proven that his conviction was an absolute fraud and the conviction was based on intentional misconduct." Additionally, videos of proposed witnesses were released and Slosar inaccurately referred to the pending Trial Rule 60(B) Motion filed in this Court as an "appeal."

10. The Indiana Supreme Court in *In re: Litz*[,] 721 N.E.2d 258 (Ind. 1999) addressed behavior such as [Slosar's] and held that Litz's publication of a letter in several local newspapers which state[d] his client committed no crime, criticized the prosecutor's decision to retry the case, and mentioned his client had passed a lie detector test constituted a violation of Ind. Professional Conduct Rule 3.6(a).[7]

---

[7] Indiana Rule of Professional Conduct 3.6(a) provides as follows:

A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably

11. In sum, Slosar's comments and statements are beyond the scope of the exceptions stated in Ind. Professional Conduct Rule 3.6(b) as to what a lawyer who is participating in litigation of a matter may state.[8] The statements are highly inflammatory, defamatory, inaccurately state the law as it exists at this time with respect to Royer's conviction, and draw legal conclusions about matters not yet adjudicated. Slosar's actions go beyond simply summarizing evidence that is a matter of public record. Further, any alleged "new evidence" must be heard in accordance with the judicial process before any legal conclusions may be reached. Essentially, the extrajudicial statements made by Slosar at the public press conference, and which were reported in the media, do exactly what the Rule prohibits - forming public opinion that has a substantial likelihood of materially prejudicing the adjudicative proceedings pending in this Court.

---

should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

[8] Indiana Rule of Professional Conduct 3.6(b) provides as follows:

Notwithstanding paragraph (a), a lawyer may state:

(1)    the claim, offense or defense involved and, except when prohibited by law, the identity of the persons involved;

(2)    information contained in the public record;

(3)    that an investigation of a matter is in progress;

(4)    the scheduling or result of any step in litigation;

(5)    a request for assistance in obtaining evidence and information necessary thereto;

(6)    a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest; and

(7)    in a criminal case, in addition to subparagraphs (1) through (6):

    (i)    identity, residence, occupation and family status of the accused;

    (ii)    if the accused has not been apprehended, information necessary to aid in apprehension of that person;

    (iii)    the fact, time and place of arrest; and

    (iv)    the identity of investigating and arresting officers or agencies and the length of the investigation.

13. Here, the Court finds that the statements Slosar made at the public press conference held on June 13, 2018, violated Ind. Rule of Professional Conduct 3.6(a) in that they were extrajudicial statements that Slosar knew or reasonably should have known would be disseminated by means of public communication and would have a substantial likelihood of prejudicing the adjudicative proceeding that is pending in this matter, specifically, his Trial Rule 60(B) Motion.

14. While the Court clearly recognizes Slosar's First Amendment right to free expression, as noted by the Indiana Supreme Court in the Commentary to Ind. Professional Rule of Conduct 3.6,[9] that right must be balanced with the right to fair and impartial legal proceedings, which may entail some restriction of the information that may be disseminated about a party prior to and during those proceedings. Ind. Professional Rule of Conduct 3.6 does not curtail free speech except to the extent necessary to protect the corresponding right to fair

---

[9] The commentary to Indiana Rule of Professional Conduct 3.6 provides, in relevant part, as follows:

> It is difficult to strike a balance between protecting the right to a fair trial and safeguarding the right of free expression. Preserving the right to a fair trial necessarily entails some curtailment of the information that may be disseminated about a party prior to trial, particularly where trial by jury is involved. If there were no such limits, the result would be the practical nullification of the protective effect of the rules of forensic decorum and the exclusionary rules of evidence. On the other hand, there are vital societal interests served by the free dissemination of information about events having legal consequences and about legal proceedings themselves. The public has a right to know about threats to its safety and measures aimed at assuring its security. It also has a legitimate interest in the conduct of judicial proceedings, particularly in matters of general public concern. Furthermore, the subject matter of legal proceedings is often of direct significance in debate and deliberation over questions of public policy.

proceedings. This is the basis upon [which] the Court is acting.

15. For all these reasons, Slosar is hereby enjoined from making extrajudicial commentary and statements to the extent explained in Ind. Professional Rule of Conduct 3.6 on the matter that is pending before this court. Failure to comply with this Order will be deemed willful failure to comply with Ind. Professional Conduct Rule 3.6 and is subject to appropriate sanctions.

(App. Vol. 3 at 56-59). Also, in the order, the trial court noted that Attorney Slosar had argued that Indiana Rule of Professional Conduct 3.6 had not applied to this case because no trial had been pending. The trial court responded that it disagreed with Attorney Slosar's over[-]simplification of the intent of the rule and found that "the clear and express language of paragraph (a) is that dissemination of extrajudicial statements that will have a likelihood of materially prejudicing **an adjudicative proceeding** (Emphasis added) is prohibited. Indeed, that language, as well as 'legal proceedings' is used throughout the Rule, the Commentary, and in case law." (App. Vol. 3 at 56).

[8]   In August 2018, Royer filed a motion to withdraw, without prejudice, his Trial Rule 60(B) motion, which the trial court granted. In May 2019, Royer filed a motion for permission to file a successive petition for post-conviction relief, which this Court granted. Royer then filed a successive petition for post-conviction relief and a motion for change of judge. The post-conviction court judge, who had issued the order finding that Attorney Slosar had violated Indiana Rule of Professional Conduct 3.6(a), granted Royer's motion for a change of judge.

[9]     Royer's case was subsequently assigned to Kosciusko Superior Court Judge Joe V. Sutton ("Judge Sutton"), who held a four-day hearing on Royer's successive petition for post-conviction relief in October and November 2019. Following the hearing, Judge Sutton issued a fifty-five-page order granting Royer's successive petition for post-conviction relief and vacating Royer's murder conviction based on newly discovered evidence and *Brady* violations.

[10]    Judge Sutton specifically found newly discovered evidence that Elkhart County Forensic Specialist Dennis Chapman ("Forensic Specialist Chapman") had not been qualified to conduct the latent fingerprint comparisons that he had made in Royer's case.[10] Judge Sutton noted that then-Elkhart County Chief Deputy Prosecutor Vicki Becker ("Deputy Prosecutor Becker")[11] had been responsible for meeting with Forensic Specialist Chapman and preparing him to testify. However, Judge Sutton found that Deputy Prosecutor Becker had not been provided with Forensic Specialist Chapman's resume and had not been told that he was not qualified to conduct comparisons of latent prints. Judge Sutton further found that Forensic Specialist Chapman had "misled [Deputy Prosecutor] Becker into believing that he was qualified to conduct the type of latent print comparisons that [had] exist[ed]" in the case. (App. Vol. 3 at 69).

---

[10] In 2012, the Elkhart County Sheriff's Department disciplined Forensic Specialist Chapman for his role in Royer's case. Forensic Specialist Chapman retired in 2013.

[11] Vicki Becker is currently the elected Elkhart County Prosecutor.

Judge Sutton also found a *Brady* violation because Forensic Specialist Chapman's lack of qualifications had not been disclosed to the defense.

[11] Judge Sutton further found newly discovered evidence that Detective Carl Conway ('Detective Conway"), the lead investigator in the Sailor homicide had been removed from the homicide unit before Royer's trial. The reason for Detective Conway's removal was a misrepresentation that he had made to an attorney regarding one of the attorney's clients.[12] Based upon this misrepresentation, Detective Conway's supervisors had concerns about the impact that his misrepresentations would have on future homicide investigations and his credibility at trials if called to testify. However, Detective Conway's removal from the homicide unit had not been disclosed to Royer before trial. Judge Sutton further found a *Brady* violation because the Elkhart Police Department had not disclosed Detective Conway's removal to the defense.

[12] In addition, Judge Sutton found newly discovered evidence that Detective Conway had threatened a critical witness in Royer's case and promised her $2,000 to falsely testify against Royer at trial. Judge Sutton further found that

---

[12] Judge Sutton further explained that Detective Conway's appeal of his removal from the homicide unit had been summarily denied. In addition, Detective Conway had later been removed from the sex-crimes unit. According to Judge Sutton, during that removal process, Detective Conway had "made a complaint to [Deputy Prosecutor Becker]. A disciplinary proceeding ensued that resulted in an agreement between [Detective] Conway and the Elkhart Police Department. As part of that agreement, the Elkhart Police Department agreed to withdraw any allegations alleging or suggesting that 'he caused the Office of the Prosecuting Attorney to lose faith in the Elkhart Police Department or to question its ability to supervise its detectives, investigate sex crimes or to perform any other form of police activities.' In exchange, Detective Conway accepted a written reprimand." (App. Vol. 3 at 83-84 n.7).

the witness' recantation of her trial testimony at the post-conviction hearing and her explanation for how her statement had been crafted were both credible. In addition, Judge Sutton found a *Brady* violation because the coercion of the witness and the fabrication of her testimony had not been disclosed to the defense.

[13] Judge Sutton further found newly discovered evidence that Royer's two audio-recorded statements obtained on September 3 and September 4, 2003, which totaled approximately sixty-one minutes, were unreliable and involuntary. Judge Sutton specifically noted that Detective Conway had interrogated Royer for approximately seven and one-half hours and that there was newly discovered evidence that Detective Conway had a reputation for obtaining confessions from every suspect that he had interrogated while assigned to the homicide unit. In addition, Judge Sutton found newly discovered evidence that Detective Conway's ability to obtain confessions had not been a direct result of his internal interrogation training at the Elkhart Police Department. Judge Sutton further found newly discovered evidence that the Elkhart Police Department had not provided Detective Conway with any meaningful training on how to conduct interrogations, including how to interrogate a suspect such as Royer, who suffered from a mental disability. Judge Sutton also found that although Detective Conway had been aware of Royer's mental disability, Detective Conway did not use any protections to safeguard against the possibility of Royer giving false and unreliable statements. Judge Sutton specifically pointed out that although another member of the homicide unit had

told Detective Conway that the Elkhart Housing Authority had documentation revealing that Royer was severely disabled and had the mind of a child, Royer had not been permitted to have a lawyer, counselor, or family members present for his interrogations on September 3 and 4.

[14] In addition, Judge Sutton found newly discovered evidence that Royer had not knowingly and voluntarily waived his *Miranda* rights because Detective Conway had not properly taken the time to advise Royer of these rights. Judge Sutton also found newly discovered evidence that Detective Conway had "repeatedly provided information about the homicide to Mr. Royer throughout the unrecorded two-day interrogation sessions." (App. Vol. 3 at 101). In addition, Judge Sutton found newly discovered evidence that although Detective Conway revealed at the successive post-conviction hearing that Royer's "mental well-being [had] broke[n] down[]" during the interrogations, Detective Conway had taken Royer's recorded statement and placed him under arrest. (App. Vol. 3 at 103). Royer had been "in such a state of confusion that Detective Conway had to remind him that he [had given] a confession and was under arrest." (App. Vol. 3 at 103).

[15] Judge Sutton also found newly discovered evidence that the Elkhart Police Department's investigation into Royer's statements corroborated their unreliability. (App. Vol. 3 at 104). Specifically, Detective Conway acknowledged that he was only able to corroborate the following two basic pieces of information from all of Royer's statements: (1) Royer knew the other person who had been charged with killing Sailor; and (2) Royer lived in the

same building as Sailor. Further, many of the details in Royer's recorded statements conflicted with the physical evidence.

[16] Based on these extensive findings, including newly discovered evidence and *Brady* violations, Judge Sutton vacated Royer's murder conviction after concluding that he was entitled to a new trial. We note that although Judge Sutton found several *Brady* violations, Judge Sutton's order does not specifically state that Deputy Prosecutor Becker or any other prosecutor had known about Detective Conway's misconduct or had purposely withheld evidence from the defense.[13]

[17] On appeal, we affirmed Judge Sutton's grant of Royer's successive petition for post-conviction relief and vacation of Royer's murder conviction. *Royer*, 166 N.E.3d at 380. We specifically highlighted instances of Detective Conway's misconduct and concluded that Royer had not received a fair trial. Like Judge Sutton, we did not state that Deputy Prosecutor Becker or any other prosecutor had known about Detective Conway's misconduct or had purposely withheld evidence from the defense.

[18] We now return to the facts in Robinson's appeal. As noted above, Robinson filed his 29-page change of judge motion in October 2021. In November 2021, the State filed a response to Robinson's motion for a change of judge, and in

---

[13] "For *Brady* purposes, the prosecutor is charged with knowledge of information known by the police even if the prosecutor herself is unaware of the information." *Royer*, 166 N.E.3d at 400.

December 2021, Robinson filed a reply to the State's response. In February 2022, the post-conviction court held a hearing on Robinson's motion.

[19] In March 2022, before the post-conviction court had issued a decision on Robinson's change of judge motion, Robinson filed a supplement to his change of judge motion. In this supplement, Robinson stated that he had newly discovered evidence, which revealed that the post-conviction court had been married from 1992 until 2003 to Stephen Cappelletti ("Cappelletti"), who had been an Elkhart Police Department reserve police officer from 1983 through 1994. According to Robinson, this newly discovered evidence required the post-conviction court to grant his change of judge motion.

[20] In April 2022, the post-conviction court issued an order denying Robinson's change of judge motion. This order provides, in relevant part, as follows:

> No Order of this Court . . . support[s] a finding that the Court harbors any actual personal bias toward [Robinson]. The 2018 order in <u>Royer</u> did not constitute a premature comment on the merits of that case that would establish improper bias in the instant case. Petitioner Robinson . . . has mischaracterized the 2018 order in <u>Royer</u> beyond the Court's purpose in that case which was to curtail the misconduct of counsel for . . . Royer, Elliot Slosar, as set out in the <u>Royer</u> Order which was a legitimate judicial exercise. The motion before the Court in <u>Royer</u> was the State of Indiana's Motion for Emergency Hearing and Request for Injunction along with relevant attachments. The documents presented to the Court established that Attorney Slosar had held a press conference at which he made several statements about the criminal justice system in Elkhart County, including that Elkhart faced a "systemic failure" and "an epidemic" of wrongful convictions. After a hearing held on July

2, 2018, this Court entered an injunction (the 2018 Order) finding that counsel's public comments were highly inflammatory and defamatory in that they inaccurately stated the law as it existed at that time, and drew improper legal conclusions about matters not yet adjudicated. Unequivocally, the Court ordered that the statements Attorney Slosar made at the public press conference violated Ind. Rule of Professional Conduct 3.6(a)[.]

[Robinson] . . . opines that the 2018 Order in Royer represents a product of this Court's extrajudicial prejudices and beliefs. To the contrary, this Court never considered or ruled on any of the substantive contents of Royer's petition. More importantly, contrary to [Robinson's] assertion, this Court has not "staked out a clear position . . . that there are no systemic police and prosecutorial problems in Elkhart that lead to wrongful convictions." Rather, this Court simply found that the veracity of Attorney Slosar's comments at his June 13, 2018 press conference was lacking, and that his conduct violated professional standards. The Court was not engaging in or adjudicating the existence of an "epidemic" of wrongful conviction in Elkhart, but was addressing concerns created by Attorney Slosar's conduct.

Therefore, [Robinson's] argument that the 2018 Order somehow demonstrates that this Court has already prejudged his post conviction allegations . . . and renders this Court biased is misguided. The Court's disqualification in the instant case is not necessitated by its ruling on the past conduct of Attorney Slosar in a completely separate and distinct case, particularly since Attorney Slosar has not been admitted in the instant case and is not counsel of record[.]

Additionally, [Robinson's] contention that recusal is required in his case because the Judge worked with and may have had relationships with members of the Elkhart Police Department and Elkhart Prosecutor's Office, thereby witnessing or having knowledge of their patterns of practice in allegedly failing to comply with their *Brady* obligations is mere speculation at best.

This Judge did not work at the Prosecutor's Office anytime near [Robinson's] case and conviction, and [Robinson] has not shown that this Judge was witness to anything compromising in his case[.]

Along these same lines, [Robinson] filed a Supplement Based on Newly Discovered Evidence in Support of his Motion for Recusal on March 16, 2022 arguing that this Court must recuse in this case because the Judge was formerly married to an Elkhart Police Department reserve officer during a time period when alleged "systemic misconduct" was occurring on the police force[.] The fact is that the Judge of this Court was married to the subject reserve officer from June 6, 1992 to April 15, 2003. The subject officer worked at the Elkhart Police Department from 1983-1994; therefore, for most of the time the officer was with the Elkhart Police Department, this Judge was not married to him. Moreover, Petitioner Robinson was charged in the underlying criminal case on September 21, 2016, and this Judge had absolutely no relationship with the subject officer anytime remotely close to [Robinson's] case and conviction. [Robinson's] assertion that this Court or her ex-spouse carry any connection, let alone a significant one, to [Robinson's] 2016 crime and 2018 conviction fails[.]

In the instant case, there is absolutely no evidence whatsoever that this Court's former marriage to a police officer in any way ever swayed the Judge's decision making or does so today nineteen (19) years post-divorce. The Judge has no personal knowledge derived from extrajudicial sources stemming from that marital relationship. The Judge's ex-husband stopped working for the Elkhart Police Department in 1994, some twenty-two (22) years prior to [Robinson's] offense. [Robinson's] argument is not supported by any precedential authority, is not persuasive and recusal is not required based on the same.

(App. Vol. 10 at 60-65). One month later, Robinson filed a motion for reconsideration, which the post-conviction court denied.

[21] In May 2022, the post-conviction court certified its order for interlocutory appeal. In its certification order, the post-conviction court stated as follows:

> The Court believes that its Order denying recusal in this case demonstrates that the Court took great care to research and address each of [Robinson's] arguments, and appropriately applied well-settled case law regarding recusal in determining that no actual bias had been shown and that recusal was not warranted. Nonetheless, . . . the Court sees no reason to deviate from its inclination to certify the Order denying recusal in this case . . . to gain guidance and clarification from the Court of Appeals with respect to [Robinson's] allegations for recusal which this Court believes are based on misinterpretation and mischaracterization of the Court's previous Order in an unrelated case, as well as on unfounded conclusions that this Court harbors actual bias based on tenuous, speculative and specious claims not supported by the facts.

(App. Vol. 10 at 80-81).

[22] In May 2022, this Court accepted jurisdiction over Robinson's interlocutory appeal. Also in May 2022, Robinson asked this Court to consolidate his case with *Iris Seabolt v. State*, No. 22A-PC-00208 and *Leon Tyson v. State*, No. Number 22A-PC-143. This Court's motions panel granted Robinson's motion to consolidate the three cases, which, as explained above, we have de-consolidated.

[23] Robinson now appeals the denial of his motion for a change of judge in his post-conviction case.

# Decision

Robinson argues that the post-conviction court clearly erred when it denied his motion for a change of judge. We disagree.

At the outset, we note that the law is well-settled that "adjudication by an impartial tribunal is one of the fundamental requirements of due process imposed on the courts of this state by the Fourteenth Amendment to the federal constitution." *Matthews v. State*, 64 N.E.3d 1250, 1253 (Ind. Ct. App. 2016) (citing *Tumey v. Ohio*, 273 U.S. 510, 535 (1927)), *trans. denied*. Judges are presumed impartial and unbiased. *Matthews*, 64 N.E.3d at 1253. "'[T]he law will not suppose a possibility of bias or favor in a judge, who is already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea.'" *Matthews*, 64 N.E.3d at 1253 (quoting 3 William Blackstone, *Commentaries* *361)).

In post-conviction cases, parties seeking to overcome the presumption of judicial impartiality must move for a change of judge under Post-Conviction Rule 1(4)(b). That rule provides, in relevant part, as follows:

> Within ten (10) days of filing a petition for post-conviction relief under this rule, the petitioner may request a change of judge by filing an affidavit that the judge has a personal bias or prejudice *against the petitioner*. The petitioner's affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be accompanied by a certificate from the attorney of record that the attorney in good faith believes that the historical facts recited in the affidavit are true. A change of judge shall be

> granted if the historical facts cited in the affidavit support a rational inference of bias or prejudice.

(Emphasis added).

[27] This rule requires the judge to examine the affidavit, treat the historical facts recited in the affidavit as true, and determine whether these facts support a rational inference of bias or prejudice. *Pruitt v. State*, 903 N.E.2d 899, 939 (Ind. 2009). A change of judge is neither automatic nor discretionary but calls for a legal determination by the post-conviction court. *Id.* We presume that the post-conviction court is not biased against a party and disqualification is not required under the rule unless the judge holds a "personal bias or prejudice." *Id.* (quoting P.-C.R. 1(4)(b)). Typically, a bias is personal if it stems from an extrajudicial source, which means a source separate from the evidence and argument presented at the proceedings. *Pruitt*, 903 N.E.2d at 939. "Such bias or prejudice exists only where there is an undisputed claim or the judge has expressed an opinion on the merits of the controversy before [her]." *L.G. v. S.L.*, 88 N.E.3d 1069, 1073 (Ind. 2018).

[28] "Further, Indiana courts credit judges with the ability to remain objective notwithstanding their having been exposed to information which might tend to prejudice lay persons." *Id.* In addition, "[a] showing of prejudice sufficient to support a motion for a change of judge must be established from personal, individual attacks on a defendant's character, or otherwise." *Miller v. State*, 106 N.E.3d 1067, 1076 (Ind. Ct. App. 2018), *trans. denied.* Stated differently, "a motion for a change of judge should be granted only if the evidence reveals such

a high degree of favoritism or antagonism as to make a fair judgment impossible." *State v. Shackleford*, 922 N.E.2d 702, 707 (Ind. Ct. App. 2010) (cleaned up), *trans. denied*.

[29] The ruling on a motion for change of judge is reviewed under the clearly erroneous standard. *Garland v. State*, 788 N.E.2d 425, 433 (Ind. 2003). Reversal will require a showing which leaves us with a definite and firm conviction that a mistake has been made. *Id.*

[30] We restate Robinson's first argument as whether the post-conviction court clearly erred in denying his motion for change of judge because the post-conviction court's 2018 order in the unrelated Royer case finding that Attorney Slosar had violated Rule of Professional Conduct 3.6(a) supports a rational inference of bias or prejudice against Robinson.[14] "Prior judicial rulings generally do not support a rational inference of prejudice." *Voss v. State*, 856 N.E.2d 1211, 1217 (Ind. 2006). "Adverse rulings and findings by a trial judge

---

[14] We note that Robinson asserts that in *Royer*, 166 N.E.3d at 380, this Court found systemic police and prosecutorial misconduct in Elkhart. We did not. Specifically, we find no language in our opinion in *Royer* to support such an interpretation. Rather, our review of our opinion in *Royer* reveals that the newly discovered evidence related primarily to the horrific conduct of one Elkhart Police Department detective.

Robinson also asserts that in its July 2018 order in the Royer case, the post-conviction court found that there was no systemic police or prosecutorial misconduct in Elkhart. It did not. The post-conviction court's order in the Royer case solely addressed the statements that Attorney Slosar made at a press conference after he had filed in Royer's case a motion for relief from judgment pursuant to Indiana Trial Rule 60(B). Specifically, the post-conviction court found that Attorney Slosar's statements violated Rule of Professional Conduct 3.6(a) because Attorney Slosar knew or reasonably should have known that these statements would be disseminated by means of public communication and would have a substantial likelihood of prejudicing the adjudicative proceeding that was pending in the matter.

from past proceedings with respect to a particular party are generally not sufficient reasons to believe the judge has a personal bias or prejudice." *Id*. Although the mere assertion that certain adverse rulings by a judge constitute bias and prejudice does not establish the requisite showing, there may be circumstances in which a rational inference of bias or prejudice may be established if a judge's order is sufficiently egregious. *Id*.

[31] Here, however, we find nothing egregious in the July 2018 order that the trial court judge, who is the post-conviction court judge in Robinson's case, issued in the unrelated Royer case. Rather, the trial court simply concluded that Attorney Slosar's press conference statements regarding systemic police misconduct in Elkhart, which he had made before the adjudication of Royer's Trial Rule 60(B) motion, violated Rule of Professional Conduct 3.6(a). Further, and more importantly, the trial court's July 2018 order does not mention Robinson or anything about Robinson's case, which occurred more than ten years after Royer's case. In sum, we find nothing in the Royer order that supports a rational inference of bias or prejudice *against Robinson*.[15]

---

[15]  We further note that Robinson's argument that the post-conviction court should have granted his motion for a change of judge because it granted the motion for a change of judge in the Royer case is unavailing. Specifically, the fact that the post-conviction court granted a motion for a change of judge in Royer's case "appears to us to evidence the fact that [the post-conviction court judge] would conduct herself as an unbiased jurist in applying the law to the particular facts of a case." *Smith v. State*, 613 N.E.2d 412, 414 (Ind. 1993) (affirming the trial court's denial of a motion for a change of judge where the petitioner argued that the adverse publicity that the post-conviction court received as a result of granting an unrelated petition for post-conviction relief would cause the post-conviction court to be biased against granting post-conviction relief in petitioner's case), *cert. denied*.

[32]     We restate Robinson's second argument as whether the post-conviction court clearly erred in denying Robinson's motion for a change of judge because the post-conviction court's 1998-2002 tenure as a deputy prosecutor supports a rational inference of bias or prejudice against Robinson. In *Calvert v. State*, 498 N.E.2d 105, 107 (Ind. Ct. App. 1986), this Court concluded "that a trial judge must disqualify [her]self from a proceeding in which [s]he has actively served as an attorney for one of the parties regardless of whether actual bias or prejudice exists." Here, there is no allegation that the post-conviction court judge actively served as a deputy prosecutor on Robinson's case. Indeed, this would have been an impossibility because the post-conviction court judge left the prosecutor's office in 2002, fourteen years before the State charged Robinson with three counts of Level 3 felony robbery with a deadly weapon and twenty-one years before Robinson's upcoming hearing on his post-conviction petition. Given the remoteness in time of the post-conviction court's tenure in the Elkhart Prosecutor's Office in relation to the charges against Robinson and his upcoming post-conviction hearing, Robinson has failed to show how the post-conviction court's 1998-2002 tenure as a deputy prosecutor supports a rational inference of bias or prejudice *against Robinson*. *See Bloomington Magazine, Inc. v. Kiang*, 961 N.E.2d 61, 66 (Ind. Ct. App. 2012) (explaining that the proximity in time of the historical facts alleged in the affidavit to the matter concerning the motion for a change of judge is a relevant inquiry).

[33]     Lastly, we restate Robinson's third argument as whether the post-conviction court clearly erred in denying Robinson's motion for a change of judge because

the post-conviction court judge's 1992-2003 marriage to Cappelletti supports a rational inference of bias or prejudice against Robinson. We note that the post-conviction court judge's marriage to Cappelletti ended thirteen years before the State charged Robinson with three counts of Level 3 felony robbery while armed with a deadly weapon and twenty years before Cappelletti's potential testimony in Robinson's post-conviction case. Robinson's affidavit does not allege that any relationship existed between Cappelletti and the post-conviction court judge after their marriage had been dissolved. Indeed, in her order denying Robinson's motion for a change of judge, the post-conviction court judge specifically noted that she had not had contact with Cappelletti since their marriage had been dissolved in 2003. Given the remoteness in time of the post-conviction court judge's marriage to Cappelletti to the charges against Robinson and his upcoming post-conviction hearing, Robinson has failed to show that this prior marriage supports a rational inference of bias or prejudice against Robinson. *See Bloomington Magazine*, 961 N.E. 2d at 66. *See also McKinney v. State*, 873 N.E.2d 630, 640 (Ind. Ct. App. 2007) (explaining that where the personal relationship between the trial court judge and her former employee, who was the murder victim's mother, had ended twenty years before the defendant's trial and the defendant had not alleged any facts suggesting that any relationship existed between the two after that employment had been terminated, the trial court did not clearly err in denying defendant's motion for a change of judge), *trans. denied*.

## Conclusion

In sum, the recited historical facts on which Robinson based his motion for a change of judge simply do not support a rational inference of bias or prejudice against Robinson as contemplated by Post-Conviction Rule 1(4)(b). We further note that the post-conviction court has neither expressed an opinion on the merits of Robinson's case nor attacked his character. Accordingly, because we are not left with a definite and firm conviction that a mistake has been made, we conclude that the post-conviction court did not clearly err in denying Robinson's motion for a change of judge. *See Garland*, 788 N.E.2d at 433. We, therefore, affirm the post-conviction court's denial of Robinson's motion. *See Pruitt*, 903 N.E.2d at 939 (explaining that where Pruitt's post-conviction court judge was the same judge who had presided over his trial and where Pruitt's affidavit in support of his motion for a change of judge had shown no historical facts that had demonstrated personal bias on the part of the post-conviction court judge, Pruitt had been provided with a full and fair post-conviction relief hearing before an impartial judge).

Affirmed.

Crone, J., and Bradford, J., concur.